PFIZER, INC., et al., Appellants,

v.

The GOVERNMENT OF INDIA et al., Appellees.

No. 76–1064.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1976.

Decided May 19, 1976.

On Rehearing En Banc Sept. 3, 1976.

Certiorari Granted April 18, 1977.
See 97 S.Ct. 1643.

Samuel W. Murphy, Jr., Donovan, Leisure, Newton & Irvine, New York City, for appellants.

Douglas V. Rigler, Foley, Lardner, Hollabaugh & Jacobs, Washington, D. C., for appellee, Republic of the Philippines.

Julius Kaplan, Kirkwood, Kaplan, Russin & Vecchi, Washington, D. C., for Government of India and Republic of Vietnam.

Harold C. Petrowitz, Becker, Channell, Becker & Feldman, Washington, D. C., for appellee, Imperial Government of Iran.

Catherine G. O'Sullivan, Dept. of Justice, Washington, D. C., Thomas E. Kauper, Asst. Atty. Gen., Antitrust Division, Howard E. Shapiro and Samuel R. Simon, Attys., Dept. of Justice, on the brief, for amicus curiae (urging affirmance), United States of America.

Allen F. Maulsby, New York City, for appellants, Squibb Corp., E. R. Squibb & Sons, Inc. and Olin Corp.

John H. Morrison, Chicago, Ill., and Joe A. Walters, Minneapolis, Minn., for appellant, Pfizer, Incorporated.

Peter Dorsey, Minneapolis, Minn., for appellant, American Cyanamid Co.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

This interlocutory appeal is brought under 28 U.S.C. § 1292(b) by six major pharmaceutical firms, defendants in the district court in antitrust treble damage suits brought by the governments of several foreign countries.[1] The sole question certified for appeal is whether the district court was correct in holding that foreign governments are "persons" entitled to sue for treble

---

1. The appellant pharmaceutical firms are Pfizer, Inc., American Cyanamid Company, Bristol-Myers Company, Squibb Corporation, Olin Corporation and The Upjohn Company.

   The governments involved in this appeal are the Government of India, the Imperial Government of Iran, the Republic of the Philippines and the Republic of Vietnam (the former government of South Vietnam). In a prior opinion, this court refused to pass upon the

continued viability of suit by the Republic of Vietnam. This question should be determined by the district court on remand. *See Pfizer, Inc. v. Lord,* 522 F.2d 612, 613 n. 3 (8th Cir. 1975).

We are informed that the governments of West Germany, Spain, Columbia and South Korea have filed similar suits. The latter three suits were filed in the District of Columbia.

damages under § 4 of the Clayton Act, 15 U.S.C. § 15. We affirm the judgment of the district court.

All parties agree this is a case of first impression.[2] Civil suits by foreign sovereigns have long been recognized in federal courts. *See The Sapphire,* 78 U.S. 164, 11 Wall. 164, 20 L.Ed. 127 (1870).[3] The Constitution of the United States extends the jurisdiction of the federal courts "to all Cases . . . [and] Controversies . . between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S.Const. Art. III, § 2.

It is agreed, however, that whether a foreign government may sue under the Clayton Act turns on the interpretation of the statute and nothing more. Our task is to determine the intent of Congress in passing the Act.[4]

Section 4 of the Clayton Act provides:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15.

Section 1 of the Act provides the following definition:

> The word "person" or "persons" wherever used in this Act shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country.

15 U.S.C. § 12.

The Supreme Court has stated, with reference to the antitrust laws,

> Whether the word "person" or "corporation" includes a State or the United States depends upon its legislative environment. . . . The *Cooper* case recognized that "*there is no hard and fast rule of exclusion.* The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law." 312 U.S. at

---

**2.** This issue was presented to this court once before by the same parties. At that time, the district court had not certified the question for interlocutory appeal under 28 U.S.C. § 1292(b). We held under those circumstances that an appeal was premature and that the order of the district court was not subject to review on a petition for a writ of mandamus. *Pfizer, Inc. v. Lord,* 522 F.2d 612 (8th Cir. 1975).

On remand, the district court granted § 1292(b) certification on whether foreign governments are "persons" within the meaning of § 4 of the Clayton Act, 15 U.S.C. § 15.

**3.** In *The Sapphire,* Mr. Justice Bradley wrote for the Court:

A foreign sovereign, as well as any other foreign person, who has a demand of a civil nature against any person here, may prosecute it in our courts. To deny him this privilege would manifest a want of comity and friendly feeling. Such a suit was sustained in behalf of the King of Spain in the third circuit by Justice Washington and Judge Peters in 1810. . . . Our own government has largely availed itself of the like privilege to bring suits in the English courts in cases growing out of our late civil war. Twelve or more of such suits are enumerated in the brief of the appellees, brought within the last five years in the English law, chancery, and admiralty courts. There are numerous cases in the English reports in which suits of foreign sovereigns have been sustained, though it is held that a sovereign cannot be forced into court by suit.

78 U.S. at 167–68, 11 Wall. at 167–168, 20 L.Ed. at 130.

**4.** All parties, and the United States (who appears as *amicus curiae* to urge that foreign sovereigns are entitled to sue) raise many public policy arguments concerning the potential effects on foreign trade, foreign relations, and the economy of a ruling either way. It is urged by appellees that dire consequences will flow from a determination that a foreign government is not entitled to sue for treble damages under United States antitrust laws. These are legislative arguments, and as such are not germane to the proper exercise of judicial power, except as they shed light on the purpose and intent of Congress in passing the legislation before us.

604–05, 61 S.Ct. at page 743, 85 L.Ed. at 1071.

*Georgia v. Evans,* 316 U.S. 159, 161, 62 S.Ct. 972, 974, 86 L.Ed. 1346, 1350 (1942) (emphasis added).

Two decisions of the United States Supreme Court offer guidance, but beyond these we find little relevant help in construing the statute. In *United States v. Cooper Corp.,* 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), the Court decided that the United States government was not within the definition of "person" under the antitrust laws. One year later, however, in *Georgia v. Evans,* 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942), the Court held that Congress intended a state of the United States to be a "person" entitled to sue for treble damages.[5]

The appellant pharmaceutical firms rely on *Cooper* in urging that foreign governments are not entitled to sue. In *Cooper,* the Supreme Court found that Congress' provision of certain antitrust sanctions and remedies available only to the United States indicated an intent to exclude the United States government from the class of persons entitled to sue for treble damages. The Court pointed out in *Cooper* that only the United States could institute criminal prosecutions, request injunctions to restrain violations, and seize goods owned under contracts which violated the antitrust laws.[6]

*Cooper* does contain passages which on the surface lend support to appellants' argument. The Court observed:

Since, in common usage, the term "person" does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it.

312 U.S. at 604, 61 S.Ct. at 743, 85 L.Ed. at 1074.

The Court further stated:

The more natural inference, we think, is that the meaning of the word was in both uses limited to what are usually known as natural and artificial persons, that is, individuals and corporations.

*Id.* at 606, 61 S.Ct. at 744, 85 L.Ed. at 1075.

Finally, the Court concluded:

The very fact, however, that this sweeping inclusion of various entities was thought important to preclude any narrow interpretation emphasizes the fact that if the United States was intended to be included Congress would have so provided expressly.

*Id.* at 607, 61 S.Ct. at 745, 85 L.Ed. at 1076.

However, these observations must be read in light of the subsequent decision of *Georgia v. Evans, supra,* which recognized that the word "person", as used in the antitrust laws, did include the governments of domestic states. In *Evans,* Mr. Justice Frankfurter pointed out that *Cooper* held only that, due to the alternative antitrust weapons granted to the United States government, that government was not entitled to sue for treble damages as well. However, he emphasized that *Cooper* did not hold "that the word 'person', abstractly

---

**5.** Both *Cooper* and *Evans* dealt with former § 7 of the Sherman Act, which was repealed in 1955. That section provided:

Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee.

**6.** In *Cooper,* the Court listed the following provisions:

Sections 1, 2, and 3 impose criminal sanctions for violations of the acts denounced in

those sections respectively. Section 4 gives jurisdiction to the federal courts of proceedings by the Government to restrain violations of the Act and imposes upon United States Attorneys the duty to institute equity proceedings to that end. Section 5 regulates service in such suits. Section 6 authorizes seizure, in the course of interstate transportation, of goods owned under any contract or pursuant to any conspiracy made illegal by the statute.

312 U.S. at 607, 61 S.Ct. at 745, 85 L.Ed. at 1076.

In 1955, Congress amended the Clayton Act to provide the United States government the right to sue for actual damages. *See* 15 U.S.C. § 15a.

considered, could not include a governmental body." 316 U.S. at 161, 62 S.Ct. at 973, 86 L.Ed. at 1350. Thus, in *Evans,* the Court distinguished *Cooper* by focusing on the distinctions between the array of remedies and sanctions given to the United States government and the single remedy of a treble damage suit provided to others who might be injured due to antitrust violations.

In *Evans* the Court said:

The considerations which led to this construction [in *Cooper*] are entirely lacking here. The State of Georgia, unlike the United States, cannot prosecute violations of the Sherman Law. . . . If the State is not a "person" within § 8, the Sherman Law leaves it without any redress for injuries resulting from practices outlawed by that Act.

The question now before us, therefore, is whether no remedy whatever is open to a State when it is the immediate victim of a violation of the Sherman Law. We can perceive no reason for believing that Congress wanted to deprive a State, as purchaser of commodities shipped in interstate commerce, of the civil remedy of treble damages which is available to other purchasers who suffer through violation of the Act. . . . Reason balks against implying denial of such a remedy to a State which purchases materials for use in building public highways. Nothing in the Act, its history, or its policy, could justify so restrictive a construction of the word "person" in § 7 as to exclude a State. Such a construction would deny all redress to a State, when mulcted by a violator of the Sherman Law, merely because it is a State.

7. Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . with foreign nations." Section 2 of the Act, 15 U.S.C. § 2, refers to the same commerce "with foreign nations" in prohibiting monopolization. The definition of "commerce" in § 1 of the Clayton Act, 15 U.S.C. § 12, refers three times to commerce "with foreign nations."

8. More than one hundred years ago, the Supreme Court of the United States recognized:

316 U.S. at 162–63, 62 S.Ct. at 974, 86 L.Ed. at 1350.

We find the same reasoning applicable to a foreign sovereign who claims injury due to antitrust violations and seeks to recover treble damages under the Clayton Act. When Congress enacted the antitrust laws, it expressly recognized that illegal contracts, conspiracies and monopolies by domestic firms may affect commerce with other nations.[7] In view of the holding in *Evans* that Congress intended domestic state governments to have standing to sue for treble damages under the antitrust laws, we conclude that Congress intended other bodies politic, such as a foreign government, to enjoy the same right.[8] There is certainly no indication of a contrary intent in the legislative history. In contrast to *Cooper,* no other provisions of the Act support the contention that Congress intended to exclude foreign nations. We find that the district court correctly held that foreign nations are "persons" under § 4 of the Act entitled to sue for treble damages.

The judgment is affirmed.

ROSS, Circuit Judge (concurring).

I concur in the opinion of Judge Lay because I think the result is mandated by *Georgia v. Evans, supra.* I believe, however, that Congress, in passing § 4 of the Clayton Act, 15 U.S.C. § 15, gave no consideration nor did it have any legislative intent whatsoever, concerning the question of whether foreign governments are "persons" under the Act. In my opinion it is time for Congress to re-examine this extremely im-

Every sovereign State is of necessity a body politic, or artificial person, and as such capable of making contracts and holding property. . . . It would present a strange anomaly, indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, they were not entitled to the same remedies for their protection.

*Cotton v. United States,* 52 U.S. 229, 230–31, 11 How. 229, 230–31, 13 L.Ed. 675, 676 (1850).

portant question and clarify it by legislation.

## ON REHEARING EN BANC

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, WEBSTER and HENLEY, Circuit Judges, en banc.

### PER CURIAM.

The original panel opinion filed on May 19, 1976, is adopted by the court. Chief Judge Gibson and Judge Webster also join in Judge Ross' concurring opinion.

The judgment of the district court is ordered affirmed.

BRIGHT and HENLEY, Circuit Judges, dissenting:

This case presents the question of whether foreign sovereigns are "persons" entitled to sue for treble damages under § 4 of the Clayton Act (15 U.S.C. § 15). As the majority opinion acknowledges, two Supreme Court decisions provide the only instances in which similar questions have been considered. In *United States v. Cooper Corp.*, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), the Court ruled that the United States was not a "person" entitled to sue for treble damages under the anti-trust laws. In *Georgia v. Evans*, 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942), the Court held that Congress did intend the states to be such "persons." We believe that *Cooper* is the proper guide for decision of the instant case.

It seems anomalous to suggest that foreign sovereigns should enjoy the right to sue for treble damages when that right has not been granted to the United States. The *Cooper* Court stated, "Since, in common usage, the term 'person' does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it." *Id.* 312 U.S. at 604, 61 S.Ct. at 743. Furthermore, the Court noted that "if the United States was intended to be included Congress would have so provided expressly." *Id.* at 607, 61 S.Ct. at 745. We would apply this pronouncement here and exclude foreign governments as "persons" entitled to sue under the Clayton Act.

Congress made no express provision for foreign governments, nor is there any evidence that Congress considered granting a foreign government the right to sue for treble damages. Judge Ross in a separate concurrence (joined by Chief Judge Gibson and Judge Webster) appropriately observed that Congress "gave no consideration nor did it have any legislative intent whatsoever, concerning the question of whether foreign governments are 'persons' under the Act." [At 399.] The *Cooper* Court stated:

> [I]t is not our function to engraft on a statute additions which we think the legislature logically might or should have made. [312 U.S. 605, 61 S.Ct. 744.]

The judiciary ought not to add foreign governments to the "person" class without a clear Congressional intent to do so.

The majority opinion reasons that because *Georgia v. Evans, supra,* authorizes a state of the United States to bring treble damage suits as a "person" under the Clayton Act, that, therefore, foreign sovereigns must also be granted the right to sue. We do not agree with the logic of such conclusion.

The *Evans* Court reasoned that Congress intended that a State be deemed a person authorized to sue for treble damages for otherwise it would have no redress for anti-trust violations; that no reason exists for believing that Congress wanted to deny a State this remedy, and, finally, that because it already had been held that municipalities, which are subdivisions of States, were entitled to such remedy, that such remedy should be afforded the State. The majority finds "the same reasoning [is] applicable to a foreign sovereign" [at 399], we cannot agree. States and municipalities of these United States are not analogous to foreign sovereigns. Certainly Congress would face different or additional policy questions in deciding whether foreign sovereigns should be authorized to sue a domestic corporation for treble damages.

The majority has concluded that in light of *Evans,* "Congress intended other bodies politic, such as a foreign government, to enjoy the same right." [At 399.] If this conclusion rests upon Congressional intent, the analysis is tenuous at best. If this conclusion is bottomed upon reasoning that since *Evans* expanded the reach of the term "person," the definition of "person" should now be even further expanded, then the majority has adopted a questionable principle of statutory construction.

The arguments and briefs of the parties demonstrate that the issue of granting an antitrust remedy to foreign governments presents complex matters relating to international trade and foreign policy. We note that many foreign countries foster monopolistic practices as a matter of government policy. For example, Iran, one of the plaintiffs-appellees, belongs to the cartel of the Organization of Petroleum Exporting Countries (OPEC). Granting such sovereigns the right to sue American companies for treble damages will not diminish their own restraint of trade. Nevertheless, plaintiffs-appellees, and the United States, as *amicus curiae,* argue that granting foreign sovereigns the right to sue under the antitrust laws will assure effective enforcement of those laws. Furthermore, the United States declares that granting such a right will "assure optimum financial efficiency in the allocation of American dollars sent abroad." [Amicus br. at 5.] Whether these and other policy considerations will be best implemented by authorizing a foreign government to recover treble damages for antitrust violations is a determination which Congress should make.

The Supreme Court has cautioned restraint on the part of the judiciary in expanding the scope of the Clayton Act beyond statutory language without a clear expression of Congressional purpose. *See, e. g., Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 202, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974); *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 264, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). We would heed that caution and reverse the district court.