251 F.2d 412
 EVANGELICAL LUTHERAN CHURCH, a corporation, Appellant,
v.
STANOLIND OIL AND GAS CO., a corporation; Ernest Briggs; F. B. Williams; Billings County, North Dakota, a corporation; W. G. Gooding; George Heaton, Inc., a corporation, and All Other Persons Unknown Claiming Any Estate or Interest in or Lien or Encumbrance Upon the Property Described in the Complaint, Appellees.
EVANGELICAL LUTHERAN CHURCH, a corporation, Appellant,
v.
The OHIO OIL CO., a corporation; W. H. Glendenning; Hugh J. Gillespie; F. H. Ely; Fuller-Potter Lumber Co.; C. Pederson; H. S. Herrick; Billings County, North Dakota, a corporation, and All Other Persons Unknown Claiming Any Estate or Interest in or Lien or Encumbrance Upon the Property Described in the Complaint, Appellees.
 No. 15707.
 No. 15708.
 United States Court of Appeals Eighth Circuit.
 January 3, 1958.
 
 Frank F. Jestrab, Williston, N. D. (Harry M. Pippin and Bjella, Jestrab & Neff, Williston, N. D., were with him on the brief), for appellant.
 William R. Pearce, Bismarck, N. D. (Cox, Pearce & Engebretson, Bismarck, N. D., T. J. Files, J. W. Gee, V. C. McClintock, Casper, Wyo., J. B. Sandlin, Tulsa, Okl., and H. A. Thompson, Casper, Wyo., were with him on the brief), for appellees.
 Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 Plaintiff, an incorporated resident of Minnesota, commenced these two cases in North Dakota state District Court as actions to quiet title to certain real properties situated in Billings County, North Dakota. Defendants herein were variously identified as residents of the States of Delaware, Ohio, Minnesota, and North Dakota. No showing has been made as to the residence of certain other named defendants or of any unknown defendants claiming any estate or interest in or lien or encumbrance upon the property described in the complaints. Only Stanolind Oil and Gas Company, a Delaware corporation, appeared and answered as a defendant in No. 15,707. Similarly, The Ohio Oil Company, an Ohio corporation, was the sole appearing and answering defendant in No. 15,708.
 
 
 2
 The complaints were in the short statutory form set forth in Section 32-1704, N.D.R.C.1943. In substance, they allege that the plaintiff is the owner of the real estate described, that the defendants have certain claims which are inferior to plaintiff's title, and plaintiff asks that the defendants be required to set forth their claims and that the same be declared null and void, that the titles be quieted as to such claims and that plaintiff recover possession of the premises described. The defendants Ohio Oil and Stanolind Oil (appellees herein) each answered in the case in which it was involved, admitting that the plaintiff had an estate or interest in the property described, subject, however, to leasehold interests owned by each defendant under leases give by the plaintiff to them, copies of which were attached and made part of the answers. Other defendants did not appear or answer. Hereafter reference to "defendants" will accordingly mean only Ohio Oil and Stanolind Oil unless otherwise indicated.
 
 
 3
 Plaintiff replied in each action, admitting that the defendants were the holders of valid oil and gas leasehold rights but denying that said leases extended to all other minerals in the land. Plaintiff asked in each case that the claims of the defendants in and to all minerals in the lands except such as are or may be withdrawn from an oil and gas well in ordinary operation be declared null and void and only a cloud on the title and that the said cloud be removed by decree of court. These two defendants thereupon filed petitions for removal of the cases to the United States District Court for the District of North Dakota on the grounds that the plaintiff's claims against the oil company defendants were claims or causes of action separate and independent from plaintiff's claims against the other named but non-appearing defendants and that such facts were first disclosed by the plaintiff's replies, and that hence these defendants were entitled to remove to the federal court. Removal was effected under 28 U.S.C.A. § 1441(c). Plaintiff then moved to remand the cases to state court. Such motions were denied. The cases were consolidated for trial pursuant to Rule 42 (a), Fed.Rules of Civ.Proc., 28 U.S.C.A. On trial, the cases were decided against the plaintiff and in favor of the two defendants who removed and judgments were entered accordingly. These appeals followed. The parties will be referred to as in the District Court.
 
 
 4
 Plaintiff's first claim is that the court erred in denying plaintiff's motion to remand the cases to the state court.
 
 
 5
 Plaintiff contends that the removal proceedings were not commenced within the statutory 20 days after service of the complaints. It would have removability determined from a consideration of the complaints alone. It cites American Fire & Cas. Co. v. Finn, 1951, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, 19 A.L.R.2d 738. In that case, the Supreme Court did say, at page 14 of 341 U.S., at page 540 of 71 S.Ct., in concluding that that case did not involve a "separate and independent claim or cause of action": "In making this determination we look to the plaintiff's pleading, which controls."
 
 
 6
 There is, however, nothing in the opinion which justifies the conclusion that the Supreme Court was restricting the term "plaintiff's pleading" to the complaint alone, unless the complaint was the only pleading filed by plaintiff. Plaintiff also cites Preas v. Phebus, 10 Cir., 1952, 195 F.2d 61. In that case, the defendants did not remove to federal court until answers to interrogatories had been served which the trial court held justified, for the first time, the conclusion that a separate and independent, and therefore removable, cause of action was joined with a non-removable cause. The Court of Appeals reversed, determining that no separate and independent claim was presented between the plaintiff and the removing parties. In so doing, that court used language which, standing alone, might support plaintiff's contention. We think, however, it is quite obvious that the Court of Appeals for the 10th Circuit did not mean to limit the question of removability to a consideration of the complaint alone where there were subsequent pleadings. By its later decision in the case of McLeod v. Cities Service Gas Co., 10 Cir., 1956, 233 F.2d 242, at page 245, that court holds contra:
 
 
 7
 "The appellants' reply did not purport to change or restate the asserted cause of action, but it was a `pleading' or `other paper', and if it reshaped the stated claims in a manner to make removability for the first time ascertainable, the petition is indeed timely."
 
 
 8
 Such statement is in conformity with 28 U.S.C.A. § 1446(b). Inasmuch as removability first became apparent upon service of plaintiff's replies, we hold that the petitions for removal were timely.
 
 
 9
 28 U.S.C.A. § 1441(c), 62 Stat. 937, under which removal was effected herein, provides:
 
 
 10
 "(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."
 
 
 11
 Diversity of citizenship exists between the plaintiff and these defendants and there appears no question as to involvement of the statutory amount. Accordingly, we must determine whether the causes of action existing between plaintiff and these defendants were "separate and independent".
 
 
 12
 The actions began as ones to quiet title to real property in which it was alleged by plaintiff that the defendants claimed "certain estates or interests in or liens or encumbrances upon * * *" the land involved and asked that the same be declared and adjudged null and void. It was not until plaintiff's replies that the real nature of the controversy between these parties became apparent. Therein it was admitted that the defendants had an interest in the land which should not be declared null and void, but it was asked that the contracts out of which the interests arose be construed. The controversies between these parties involved only contract construction — something separate and independent from anything else in the actions. Such controversies could be determined between plaintiff and these two defendants without the presence, in any form, of the other named defendants.
 
 
 13
 Insisting that the causes of action between the plaintiff and the two defendants here were not "separate and independent" but were merely part and parcel of single actions to quiet title in which plaintiff seeks peaceful enjoyment of possession and use of the properties, the plaintiff directed attention to the legislative purpose providing for single actions to clear title to land as enunciated by the Supreme Court of North Dakota in Sexton v. Sutherland, 1917, 37 N.D. 500, 164 N.W. 278, 280:
 
 
 14
 "The Legislature intended to afford an easy and expeditious mode of determining all conflicting claims to land, whether derived from a common source or from different or independent sources, * * * and thereby avoid a multiplicity of suits."
 
 
 15
 An action to quiet title is indeed an effective method of adjudicating title to real property as against numerous defendants having different and diverse types of claims. Nevertheless, the form of the action should not be permitted to obscure the circumstances and does not merge the separate and independent claims into one. In denying a motion to remand an action to quiet title which had been removed to the federal court under the provisions of 28 U.S.C.A. § 1441(c), the court, in Bonner v. Smith, 1953, D.C. Okl., 114 F.Supp. 895, at page 896, stated:
 
 
 16
 "Although any person whose right may cast a cloud upon a title must be included in an action to quiet title in order to achieve marketability under the court's final decree, parties having claims based upon different sources of title or by virtue of liens springing forth from distinct origins may as between any two parties or classes of parties litigate their differences without the joinder of other claimants. * * *
 
 
 17
 "The Oklahoma statute which authorizes the joining of claimants regardless how varied the bases for claim be, recognizes the expediency of such a joinder. However, this procedural statutory authority to join various claims does not of itself merge the separate and independent claims into a singular substantive claim."
 
 
 18
 See also Miller v. Buyer, 1927, 82 Colo. 474, 261 P. 659, which was an action to quiet title wherein some of the defendants, non-residents, attempted to remove to federal court. That right was denied by the trial court. The case was tried and appealed to the Colorado Supreme Court. In reversing on the ground that the petition for removal should have been granted, the court said, 261 P. at page 660:
 
 
 19
 "A suit to quiet title is severable as to each defendant. Stanbrough v. Cook, [C.C., 38 F.2d 369, 3 L.R.A. 400] supra; Bacon v. Felt (C.C.) 38 F. 870. Any one of the defendants could have been sued alone, and therefore the action was separable into independent suits, as required in Barth v. Coler, (C.C.A.) 60 F. 466; Goldsmith v. Gilliland, (C.C. A.) 24 F. 154; Bates v. Carpentier, (C.C.) 98 F. 452.
 
 
 20
 "The claim of defendant in error is that the controversy is not separable. He says that the single question is whether plaintiff owns the property. Not so. That would be so in ejectment, but to quiet title each defendant is called upon to come in and set up his claim to the property. Stanbrough v. Cook, supra, p. 373. * * * The rights of none are dependent on the action or right of any other. If any action is separable, an action to quiet title must be."
 
 
 21
 In the instant case, the plaintiff's replies clearly indicate that there were separate and independent controversies between the plaintiff and these two defendants which could be entirely and finally disposed of as between them to the complete exclusion of the other defendants. The record before us indicates that no other defendants appeared in any way and service upon them was unnecessary to a determination of rights as between these parties. There existed "separate and independent" controversies within the purview of the removal statute.
 
 
 22
 Plaintiff attempts to raise here for the first time the question of constitutionality of the removal statute, 28 U. S.C.A. § 1441(c). That statute contains on its face a direct grant of removal jurisdiction which plainly encompasses the present situation. No question or objection with reference to its constitutionality was raised in the pleadings, at the time of the motion to remand or at the time of trial. The trial court was not required to look beyond the language of the legislative grant for its jurisdiction or authority to act. We accordingly hold that it is not properly before us because of lack of timeliness.
 
 
 23
 We next consider the trial court's determination that the leases herein were not ambiguous and that in addition to oil and gas the leases covered "all other minerals". The leases in the two cases are identical in all material respects. Each is entitled "Oil and Gas Lease" and, insofar as the provisions thereof are pertinent to these determinations, provides:
 
 
 24
 "Witnesseth: That the lessor, for and in consideration of Ten and more Dollars ($10.00), cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let exclusively unto said lessee with the exclusive right of mining, exploring by geophysical and other methods, and operating for and producing therefrom oil, gas, casinghead gas, casinghead gasoline, and all other minerals, and laying pipe lines, telephone and telegraph lines, and building tanks, power stations, gasoline plants, ponds, roadways and structures thereon to produce, save and take care of said products, and the exclusive right of injecting water, brine and other fluids into sub-surface strata, and housing and boarding employees and any and all other rights and privileges necessary, incident to, or convenient for the economical operations alone, or conjointly with neighboring land, for the production, saving and taking care of oil, gas, casinghead gas, casinghead gasoline, and all other minerals, * * *.
 
 
 25
 "In consideration of the premises the said lessee covenants and agrees:
 
 
 26
 "1st. To deliver to the credit of the lessor, free of cost, in the pipe line to which lessee may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option, to pay to the lessor for such one eighth royalty, the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line or into storage tanks.
 
 
 27
 "2nd. To pay the lessor one-eighth, at the market price at the well for the gas so used, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the wells at his own risk and expense.
 
 
 28
 "3rd. To pay lessor for gas produced from any oil well and used off the premises or for the manufacture of casinghead gasoline, one-eighth, at the market price at the well for the gas so used, for the time during which such gas shall be used, said payments to be made monthly.
 
 
 29
 "4th. To pay or deliver to lessor, on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at lessee's election, except that on sulphur the royalty shall be fifty cents (50¢) per long ton."
 
 
 30
 It is the contention of the plaintiff that such leases cover only oil, gas, casinghead gas, casinghead gasoline and associated hydrocarbons. We are, of course, controlled by the law of the State of North Dakota and the opinions of its Supreme Court enunciating such law. The North Dakota Supreme Court, in MacMaster v. Onstad, an opinion filed October 28, 1957, (subsequent to the time these cases were argued here) N.D., 86 N.W.2d 36, 38, rehearing denied November 27, 1957, has in the main determined the question of North Dakota law for us. That case involved a lease which was, for our purposes, identical with those executed between the parties herein. The only difference, insofar as the applicable law is concerned, is that the leases in the instant cases were executed prior to the legislative enactment of Chapter 235, Laws of North Dakota, 1955, and the lease in the MacMaster case was executed subsequently thereto. That section provides as follows:
 
 
 31
 "No lease or conveyance of mineral rights, or royalties separate from the surface rights in real property in this state shall be construed to grant or convey to the grantee thereof any interest in and to any gravel, coal, clay or uranium unless the intent to convey such interest is specifically and separately set forth in the instrument of lease or conveyance."
 
 
 32
 The lease in the MacMaster case was executed September 24, 1956, and is accordingly governed by the foregoing provisions. The North Dakota Supreme Court held in the MacMaster case:
 
 
 33
 "It follows that the words `all other minerals', as used therein, do not include gravel, coal, clay or uranium."
 
 
 34
 The 1955 law is not applicable to the leases herein. With that distinction, the North Dakota Supreme Court's exceptionally well-considered opinion in the MacMaster case disposes of the problem insofar as lease interpretation is concerned herein. The trial court in the MacMaster case, in construing the lease, had applied the rule of ejusdem generis in the construction of the words "and all other minerals". It held that the lease granted an interest only in such minerals "`as are, or can be, produced in connection with, and as an incident of, the production of oil and gas through the means of a well.'" Plaintiff here asked this court to adopt a similar view. In reversing the trial court in the MacMaster case, the North Dakota Supreme Court stated:
 
 
 35
 "It appears to us, however, that the interpretation placed on the lease by the trial court completely vitiates certain of its specific provisions. The lease grants to the lessee `the exclusive privilege of mining, and exploring by geophysical and other methods, and operating for and producing oil, gas, casinghead gas, casinghead gasoline and all other minerals'.
 
 
 36
 "There is perhaps no particular significance in the fact that the lease authorizes the lessee to mine since the verb mine is commonly used in oil and gas leases to include drilling operations. It is, however, an all inclusive word which in its ordinary sense includes every operation by which usable materials are extracted from the earth. The use of the word does not suggest a restricted interpretation of the lease but rather an unlimited one, if the unlimited interpretation is not otherwise inhibited. We do think there is significance in the fact the lease authorized the lessee to produce not simply oil and gas and other minerals but oil and gas and all other minerals. No word is more inclusive than `all' and it is difficult to see why, if the parties intended a restricted construction to be placed upon the reference to other minerals, they should use a word so completely unrestricted in its meaning.
 
 
 37
 "Of most important significance, however, is the fourth paragraph of the section of the lease which sets forth the consideration. Paragraph 1 of this section sets forth the consideration for the oil produced. Paragraphs 2 and 3 provide for the compensation for the gas produced. Paragraph 4 is as follows:
 
 
 38
 "`To pay or deliver to lessor, on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at lessee's election, except that on sulphur the royalty shall be fifty cents (50¢) per long ton.'
 
 
 39
 A review of these paragraphs immediately poses the question: If a royalty of 12½% upon all oil and gas is provided for by paragraphs 1, 2 and 3 of this section of the lease, what are the minerals upon which a 10% royalty is payable under paragraph four? Respondent considers the answer to this question a simple one and says that the other minerals are associated hydrocarbons such as methane, ethylene, acetylene, and paraffin. To this list could be added ethane, propane, butane and perhaps many others of the paraffin compounds. These, however, are not other minerals. They are the substances which, either in composition or mixture, make up the oil and gas. They are derived from the crude oil and natural gas by processing either in refineries or natural gasoline plants and no royalty is payable directly upon such products but upon the crude oil or natural gas when it is sold to the processor. This royalty is the 12½% royalty payable under royalty paragraphs 1, 2 and 3. See Magnolia Petroleum Co. v. Connellee, Tex.Com.App., 11 S.W.2d 158. Furthermore, the specific provision for the payment of a royalty upon sulphur clearly indicates that sulphur, which is not a hydrocarbon is included in the general term `all other minerals'. The trial court recognized this fact but held that only sulphur recoverable by means of the operation of an oil and gas well was included.
 
 
 40
 "In other words the genus adopted by the trial court in applying the maxim of `ejusdem generis' included only minerals recoverable from an oil well. His decision would exclude from the lease, beds of crystalline sulphur or sulphur compounds which might be discovered in the process of drilling for oil but which could only be mined by other methods. In our view the lease is not subject to so restricted a construction. In Texas, leases, `for the sole and only purpose of operating for gas and oil and other minerals' are held to include such solid sulphur deposits. Union Sulphur Co. v. Texas Gulf Sulphur Co., Tex.Civ.App., 42 S.W.2d 182; Pabst v. Roxana Petroleum Corp., Tex.Civ. App., 51 S.W.2d 802. It appears therefore that neither the class `hydrocarbons' as suggested by respondent nor the class, minerals `that can be produced in connection with, and as an incident of the production of oil and gas through the means of a well', is a proper limitation to be placed upon the words `all other minerals' in the lease under consideration. If there is a class limitation upon such words it is broader than either of those mentioned, because the class must include sulphur solids which cannot be recovered by the operation of an oil well.
 
 
 41
 "It follows that the trial court's decision, that the words `all other minerals', as used in the lease under consideration, included only minerals that might be produced by the operation of an oil and gas well, was incorrect."
 
 
 42
 The trial court in the instant case was, therefore, correct in refusing to limit the meaning of "all other minerals", as requested by plaintiff.
 
 
 43
 Plaintiff here also contends that the trial court erred in refusing to allow it to introduce evidence tending toward a reformation of the contracts. There is absolutely nothing in any of plaintiff's pleadings indicating any intention on the part of plaintiff to ask for reformation of the contracts or any allegation which, if established, would justify the conclusion that plaintiff was entitled to reformation. It is the rule that facts establishing fraud or mistake 32-0417, N.D.R.C.1943) upon which reformation might be based must be specifically pleaded. The Federal Rules of Civil Procedure, Rule 9(b), 28 U.S.C.A., provides:
 
 
 44
 "(b) Fraud, mistake, condition of the mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." (Emphasis supplied.)
 
 
 45
 While admitting that the Federal Rules of Civil Procedure are applicable to cases after they have been removed to federal court and re-pleaded there, plaintiff contends that the pleadings in the cases at bar, having been drawn and filed in the North Dakota state District Court, are to be governed by the statutory and case law of the State of North Dakota and that "if the State District Court was under a duty to decree reformation if justified by the facts, the Federal District Court was under an identical duty, and the fact that the Federal District Court has the power to order or permit a recasting of the pleadings is of no consequence where, as here, there was no recasting." If plaintiff is correct with reference to the pleadings that were drawn, served and filed in state court, the point is still unavailing to it. The identical point was also made in the MacMaster case [86 N.W.2d 43]. In denying plaintiffs' requested right to reformation upon pleadings as barren of allegations of fraud or mistake as are the instant ones, the North Dakota Supreme Court stated:
 
 
 46
 "The respondent also contends that, if the lease in question be interpreted to grant minerals other than those which may be recovered in the operation of an oil and gas well, he is, under the pleadings and the evidence, entitled to reformation of the lease.
 
 
 47
 "Respondent's only pleading in this case is the statutory complaint in an action to determine adverse claims. This complaint requires the defendant to set forth any claims which he may have that are adverse to plaintiff's title and the prayer for relief is that these claims be adjudged null and void. In his answer the defendant set up certain adverse claims and the plaintiff filed no reply setting forth a defense to these claims. Under the provisions of Section 32-1709, NDRC 1943, a reply is unnecessary except in the four instances set forth therein. Under this statute even an affirmative defense to matter set forth in the answer may be urged and proved without the necessity of filing a reply. See Dixon v. Kaufman, 79 N. D. 633, 58 N.W.2d 797, wherein the affirmative defense was fraud. A reply, however, is merely a pleading which sets up new matter as a defense to a counterclaim or other new matter set forth in an answer. Sections 28-0706, 28-0707, NDRC 1943.
 
 
 48
 "It is only the necessity of urging matters of defense against a counterclaim with which Section 32-1709, supra, dispenses. One who seeks relief by reformation is urging much more than a defense and is asking for greater relief than that the defendant's claims be held null and void. We can see no intimation that the statute abrogates the ordinary rules of pleading, where such a special and extraordinary relief as reformation is sought. There is no question but that the general rule is, that where reformation is sought, the facts which would entitle the pleader to reformation must be pleaded and the relief must be demanded. 76 C.J.S. Reformation of Instruments § 72. In support of his contention that he was entitled to reformation plaintiff has cited the case of Wilson v. Polsfut, 78 N.D. 204, 49 N. W.2d 102. What we held in that case was: that a party was entitled to relief by reformation in a statutory action to determine adverse claims, where the facts entitling the party to reformation were pleaded and reformation was demanded. Clearly, if this case has any bearing here, it is contra the plaintiff's contentions. Under the pleadings in this case the plaintiff is not entitled to a consideration of his informal request for reformation." (Emphasis supplied.)
 
 
 49
 It is obvious that under the pleadings plaintiff was not entitled to reformation under either state or federal rule. These cases are in all things affirmed.