**STATE OF NEW MEXICO ex rel. S. E. REYNOLDS, State Engineer, Plaintiff-Appellee,**

v.

**MOLYBDENUM CORP. OF AMERICA, Defendant-Appellant.**

No. 76–1674.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 28, 1977.

Decided Feb. 3, 1978.

Richard A. Simms, Sp. Asst. Atty. Gen., New Mexico, for plaintiff-appellee.

Neil C. Stillinger, Santa Fe, N. M. (Watson, Stillinger & Lunt, Santa Fe, N. M., with him on the brief), for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

We have here a general water adjudication case brought by New Mexico in federal court. The controversy is solely between the State Engineer and a private water user. The decision depends on New Mexico law. The United States District Court for the District of New Mexico held against the water user. The court of appeals allowed an interlocutory appeal under 28 U.S.C. § 1292(b). We affirm.

The purpose of the action is to obtain an adjudication of rights of all claimants to the use of water of the Red River and its tributaries, all of which are located in New Mexico. The procedure is similar to that established in several western states. See *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483. The named defendants in-

clude the United States and Molybdenum Corp. of America, Molycorp. The complaint was brought under the New Mexico water adjudication statutes, chap. 75, art. 4, N.M. Stats., alleged that defendants claimed rights under the Constitution and laws of the United States and enumerated certain federal statutes none of which have any pertinence to the present controversy between the State Engineer and Molycorp.

The first question is federal jurisdiction. We recognized the problems of water adjudication when rights may be asserted under federal statutes. New Mexico says that it has pending in federal court seven general water adjudication cases involving 8,281 individual parties. The record in the instant case shows over 500 claimants to Red River water. Many of the claimants have no right under any federal statute. New Mexico asserts on its own behalf no right or immunity under the Constitution or laws of the United States. See *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–128, 94 S.Ct. 1002, 39 L.Ed.2d 209. At the most, the complaint alleges that someone claims an unidentified right under unspecified federal law. We express no opinion as to whether the allegations are sufficient to establish federal question jurisdiction under 28 U.S.C. § 1331.

After the complaint was filed the United States filed a motion for leave to intervene. The court recognized that the United States was a named defendant and realigned the United States as a plaintiff. The United States then filed its complaint "in intervention" invoking jurisdiction under 28 U.S.C. § 1345 which grants federal jurisdiction over actions "commenced by the United States." The United States owns lands within the Red River Basin which are part of the Carson National Forest and were reserved by executive orders. See 34 Stat. 3262 and 35 Stat. 2240. The United States asserts that the reservations include the water necessary to fulfill the purpose of the executive orders. It also alleges rights under the Wild and Scenic Rivers Act, 16 U.S.C. § 1271 et seq. The United States often has reserved water rights based on withdrawals from the public domain. See

*United States v. District Court for Eagle County*, 401 U.S. 520, 522–523, 91 S.Ct. 998, 28 L.Ed.2d 278.

Intervention ordinarily cannot provide jurisdiction lacking for the main cause. See *Begg v. City of New York*, 262 U.S. 196, 198–199, 43 S.Ct. 513, 67 L.Ed. 946, and *Bantel v. McGrath*, 10 Cir., 215 F.2d 297, 299. The rule does not apply here. The United States was a named defendant and was realigned as a plaintiff. We must determine the "principal purpose" of the suit and align the parties accordingly. *Indianapolis v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47. As a practical matter, a general water adjudication is comparable to interpleader. New Mexico asks that all water users assert their claims and have them determined. The intent is to obtain a complete ascertainment of all existing rights. *Pacific Live Stock Co. v. Oregon Water Board*, 241 U.S. 440, 448, 36 S.Ct. 637, 60 L.Ed. 1084. Each person is interested both in the determination of his own claim and in the extent and validity of other claims. Ibid. at 449, 36 S.Ct. 637. In the situation presented, no good purpose is served by quibbling whether a party is a plaintiff or defendant. The United States has entered the suit as a claimant asking that its rights be determined. This action confers federal jurisdiction under § 1345.

The next problem is federal jurisdiction of the dispute between Molycorp and the State Engineer. Its determination does not depend on any federal law. The United States has shown no concern with, and is not a party to, this appeal. The question is whether we have ancillary jurisdiction over the dispute here presented. The concept applies when the subordinate claim "is a continuation of or incidental and ancillary to" the main action. See *United States v. Acord*, 10 Cir., 209 F.2d 709, 712, cert. denied 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 115, and cases cited in n. 4. See also *Aetna Insurance Co. v. Chicago, Rock Island & Pac. R. Co.*, 10 Cir., 229 F.2d 584, 586, and *Pipeliners Local Union No. 798 v. Ellerd*, 10 Cir., 503 F.2d 1193, 1198.

We have here both pendent claims and pendent parties. We are aware of *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511, which holds that multiple plaintiffs must each satisfy the jurisdictional amount requirement, but we believe that it has no application here. All claimants to Red River water are interested in the determination of their rights. Those rights are interrelated and require specific determinations of priority date, quantity of water that may be diverted and put to beneficial use, place of diversion, and perhaps other matters. The interrelationship can only be determined in an action to which all water users are parties. The function of a general adjudication proceeding is to determine individual rights and their relationship to the rights of other claimants to the use of the waters of the river. Although here we have no transaction or occurrence, we have a situation affecting hundreds of water users and the determination of the right of each is not only incidental to, but also inextricably intertwined with, the determination of the rights of all. Accordingly, the federal court had ancillary jurisdiction to determine this controversy between the State Engineer and Molycorp.

The next problem is abstention. Before the water adjudication proceeding was commenced, the State Engineer sued Molycorp in state court for determination of the issues presented on this appeal. The parties stipulated the issues should be determined in the adjudication proceedings. After the trial before the Master and his report, and after the district court had confirmed that report, Molycorp sought a rehearing and filed a motion for abstention and certification to the New Mexico Supreme Court under § 16–2–7, N.M.Stats.1953 Comp., 1975 Pock.Supp. The district court refused to abstain and entered a second order confirming the Master's report.

The Molycorp request for abstention and certification comes too late. The case has been tried and the district court has made its decision. We find nothing in *Colorado River Water Conservation District v.* *United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, which requires dismissal, abstention, or certification. There dismissal occurred before trial. Colorado River recognizes "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, 96 S.Ct. at 1246, and holds that dismissal cannot be supported by the abstention doctrine "in any of its forms." 424 U.S. at 813, 96 S.Ct. 1236. The Court goes on to require dismissal of the federal action because of the extraordinary circumstances presented. 424 U.S. at 818–820, 96 S.Ct. 1236. The court emphasizes that actions for the allocation of water "involve the disposition of property and are best conducted in unified proceedings." 424 U.S. at 819, 96 S.Ct. at 1247.

In Colorado River, the United States apparently brought the federal court action, not to seek a determination of the rights of all water users, but only to seek a declaration of its rights as against other claimants. The rights of some 1,000 water claimants had been determined in the state proceedings. Piecemeal litigation could be avoided by determination of the United States' claims in the state proceedings.

The situation before us is strikingly different. The parties to this appeal stipulated that the issues would be tried in the federal court action. The rights of many of the over 500 claimants have been determined in that action. Dismissal, abstention, or certification would promote, not prevent, fragmentation of water adjudication proceedings.

Because of the interrelationship of water rights, the problem arises of whether any binding state court determination of the dispute between the State Engineer and Molycorp can be made without affording all claimants to Red River water the right to appear in state court and express their views. We are convinced that the situation presented requires denial of the request to abstain and certify.

We turn to the merits. One prong of the controversy relates to the Molycorp use of water from its Mill Wells, the other to its

rights with regard to the Columbine Wells. With regard to Mill, Molycorp says that it is unlawfully limited to a stream depletion measured by water losses from a tailings pond area of 50 wetted acres. With regard to Columbine, Molycorp says that those wells should not be subject to the mentioned depletion limitation because they preceded the extension of the Rio Grande Underground Basin to the area involved here. After an extensive evidentiary hearing, the Master made comprehensive findings of fact and ruled against Molycorp on all issues. The district court overruled the Molycorp objections to the Master's Report and confirmed that report in all regards.

Molycorp owns and operates a mine and related properties in the Red River Basin near Questa, New Mexico. In 1922 the State Engineer issued to Molycorp Permit 1432 authorizing the appropriation and use of Red River water. In 1959 a dispute arose between Molycorp and the State Engineer over Molycorp's rights under Permit 1432. In an effort to resolve the dispute, Molycorp applied to the State Engineer for an alternate point of diversion and place of use under Permit 1432. After denial of the application, Molycorp sued the State Engineer in state court. The right of Molycorp to deplete the surface waters was upheld. The extent, or quantity, of that right was fixed in a court approved stipulation. The depletion is caused by evaporation and capillary retention in the tailings pond. By the stipulation Molycorp abandoned all rights under Permit 1432 except those specifically set forth, and retained the original priority date. By the stipulation Molycorp consented to

> "the limitation of its rights to the use of water under Permit No. 1432 to milling purposes and the transportation of the waste product to a tailings pond, the wetted area of which shall not exceed 50 surface acres at any one time * * *."

On May 21, 1965 the State Engineer granted the Molycorp application on the condition that the stipulated acreage limitation applied.

In the early 1960's Molycorp drilled the two Mill Wells, identified in the State Engineer's records as Nos. RG–14117 and RG–14117–X. On April 11, 1966, Molycorp applied for permission to use the Mills Wells as alternate points of diversion for its Permit 1432 rights. The State Engineer, on July 29, 1966, authorized the alternate point of diversion under the Permit 1432 conditions, including the acreage limitations.

The next Molycorp action was on October 3, 1966, when it filed an application under Permit 1432 to enlarge its recharge ponding by about an acre and to reduce the tailings pond area by an acre. On November 28, 1966, the State Engineer granted the request and reduced the wetted tailings pond area to 49 acres. On March 8, 1968, Molycorp attempted to withdraw its April 11 and October 3, 1966, requests and said that the works under the earlier application were used little and those under the latter application were not used at all. The State Engineer did not act on the withdrawal request.

The narrow issue is the effect of the acreage limitation imposed by the State Engineer. Section 75–6–1, N.M.Stats., provides that anyone dissatisfied with a decision of the State Engineer may take an appeal to the appropriate state district court within 30 days after notice of the decision. The same section also provides that "unless such appeal is taken within said time, the action of the state engineer shall be final and conclusive." Molycorp did not appeal from the May 21, 1965, July 29, 1966, or November 28, 1966, decisions of the State Engineer, all of which contained the wetted-acreage limitation.

The May 21, 1965, limitation was imposed pursuant to a court-approved stipulation. The July 29, 1966, and November 28, 1966, decisions arose out of applications filed by Molycorp and retained the earlier limitation. We agree with the Master that the limitation provisions are unambiguous.

Molycorp argues that the decisions of the State Engineer limiting the depletions to that resulting from 50 wetted acres are not binding on it in the instant general water

adjudication proceeding. Molycorp says that the State Engineer could not adjudicate Molycorp's depletion rights. The State Engineer agrees that he could not, and says that he did not, adjudicate the depletion rights.

The July 29, and November 28, 1966, decisions of the State Engineer were made on Molycorp's applications for alternate diversion points. Section 75–5–23, N.M.Stats., says that an appropriator, with the approval of the State Engineer, may change the place of diversion,

> "Provided, that no such change shall be allowed to the detriment of the rights of others having valid and existing rights to the use of the waters of said stream system."

Molycorp recognizes the statute and the duty of the State Engineer to prevent harm to existing rights.

The Molycorp position seems to be that the Permit 1432 depletion limitations do not apply to the Mill Wells. Rights to the use of water from those wells were initiated before the extension of the underground water basin and apparently were perfected after that extension. We are uncertain whether Molycorp claims that the Mill Wells were new appropriations. If such be the claim, it is inconsistent with Molycorp's application that the wells be an alternate point of diversion for Permit 1432 water. That application resulted in the State Engineer's July 29, 1966 order allowing the alternate point of diversion under the Permit 1432 limitations.

The State Engineer does not claim the power to adjudicate a water right. See *City of Albuquerque v. Reynolds,* 71 N.M. 428, 379 P.2d 73, 76. He does say that in a proceeding to change a place of diversion he has the duty to determine whether existing rights will be impaired and that, to prevent impairment, he may grant the change subject to conditions. *City of Roswell v. Berry,* 80 N.M. 110, 452 P.2d 179, 181.

To support its argument that here the State Engineer has improperly attempted to adjudicate its rights in the Mill Wells, Molycorp relies on *Public Service Company v. Reynolds,* 68 N.M. 54, 358 P.2d 621. In that case the State Engineer approved an application for change in point of diversion of a surface right to a well, on the condition that the maximum production from all of the applicant's claims would not exceed a stated figure. The court held that the condition was an impermissible adjudication of the applicant's water rights. As we read the Public Service decision, the condition was not pertinent to the application and was unrelated to the question of impairment. In the case before us we have a transfer of a surface right with limited depletion to a well tapping the same general water source. The limitation was pertinent to the question of impairment.

Molycorp stipulated to the depletion limitation on Permit 1432, accepted the permit with the limitation, and has used the water covered thereby for many years. Molycorp applied for the transfer of the surface right to the Mill Wells and accepted the July 29, 1966, order of transfer with the Permit 1432 limitations. Molycorp now seeks to enlarge the Mill Wells rights. The district court approved the Master's conclusion that Molycorp was barred by administrative res judicata. No need exists to explore the technicalities of waiver, estoppel, and administrative res judicata. We are satisfied that the State Engineer acted within his authority. The conditions imposed by the July 29 and November 28, 1966, orders of the State Engineer are binding on Molycorp. The drilling and use of the Mill Wells did not create a new right independent of the Permit 1432 depletion limitation.

The Columbine Wells, identified as Nos. RG–12797 and RG–12797–X present a different situation. The Rio Grande Underground Water Basin was extended to include the pertinent area on May 4, 1965. Before then, Molycorp had drilled two exploratory holes. After the basin extension a representative of the State Engineer's office told Molycorp that a permit was necessary. Molycorp then applied to the State Engineer for authority to drill the wells as alternate points of diversion for Permit

**1370**

1432 water. The State Engineer granted the application subject to the Permit 1432 limitations. Molycorp says that it was coerced into filing the application. The Master held to the contrary and we agree.

 Molycorp says that because the Columbine Wells were pre-basin wells, they are not subject to the limitations. Reliance is placed on *State v. Mendenhall,* 68 N.M. 467, 362 P.2d 998. We are not impressed. In Mendenhall the water user initiated a new right and completed it with reasonable diligence. No need exists to explore the intricacies of the New Mexico laws pertaining to underground water. Molycorp applied for a permit to complete the Columbine Wells not as sources of new rights but as alternate diversion points for Permit 1432 water. As such alternate points, they were subject to the Permit 1432 limitations.

Affirmed.