531 F.Supp. 449 (1982)
In re the GENERAL ADJUDICATION OF ALL RIGHTS TO USE WATER AND WATER RIGHTS ON the MISSOURI RIVER, STATE OF SOUTH DAKOTA.
STATE OF SOUTH DAKOTA ex rel. Mark V. MEIERHENRY, Attorney General, Plaintiff,
v.
RIPPLING WATER RANCH, INC., et al., Defendant.
Civ. No. 80-3031
United States District Court, D. South Dakota, C. D.
January 19, 1982.
*450 Mark V. Meierhenry, Atty. Gen., John P. Guhin, John J. Smith, Asst. Attys. Gen., Pierre, S. D., for plaintiff.
Philip N. Hogen, U.S. Atty., Sioux Falls, S. D., for defendant.
Reid Peyton Chambers, William R. Perry, Sonosky, Chambers & Sachse, Washington, D.C., for Standing Rock Sioux Tribe.
W. Richard West, Fried, Frank, Harris, Shriver & Kampelman, Washington, D.C. and Marvin Amiotte, Oglala Sioux Tribe, Pine Ridge, S. D., for Oglala Sioux Tribe of the Pine Ridge Indian Reservation, South Dakota.
Thomas W. Fredericks Boulder, Colo., for Crow Creek Sioux Tribe.
James McCurdy, Vermillion, S. D., for Yankton Sioux Tribe.
*451 R. Dennis Ickes, Stringham, Larsen, Mazuran & Sabin, Salt Lake City, Utah, for Lower Brule Sioux Tribe.
Joseph Troisi, Eagle Butte, S. D., for Cheyenne River Sioux Tribe.
Richard Dauphinais, Anita Remerowski, Native American Rights, Boulder, Colo., for Rosebud Sioux Tribe.

MEMORANDUM OPINION
DONALD J. PORTER, District Judge.

CASE SUMMARY
The State of South Dakota commenced this case in the Circuit Court of the Sixth Judicial Circuit, Hughes County, South Dakota, on March 17, 1980. The United States removed this case to this court on April 15, 1980, and the State thereafter moved to remand.[1] This Court finds that although nothing in the McCarran Amendment, 43 U.S.C. § 666, compels this Court to grant the State's motion, and does perceive that there are federal questions here over which it would otherwise have jurisdiction, the case must nevertheless be remanded to state court because of the failure of all defendants to join in the United States' removal petition.

FACTUAL BACKGROUND
The facts surrounding this case need only a brief allusion. The State of South Dakota has a semi-arid climate like its other western neighbors, and water is in short supply. Much of this water is claimed by private users under a doctrine of "prior appropriation", each such right being gained by diverting the water from its natural source and applying it to a beneficial use. Priority is determined by the first date of continuous use. At the same time, due to the state's large Indian reservations, there are also significant, if somewhat undefined, "reserved rights" to the water belonging to the various Tribes in South Dakota. These rights, stemming from the doctrine announced in Winters v. United States, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), take as their priority the date of the creation of the reservations. The United States itself has large tracts of land belonging to it, and claims reserved water rights for these.
In 1980, the South Dakota legislature amended Chapter 46-10 of the South Dakota Compiled Laws to give the State Attorney General the power "to bring an action for the general adjudication of the nature, extent, content, scope and relative priority of the water rights and the rights to use water of all persons, or entities, public or private, on any river system and on all other sources...." SDCL 46-10-1 (1980 S.D. Session Laws). This action was filed pursuant to this authority, and the United States, both in its own capacity and as Trustee for the Indian Tribes in the state, was joined by virtue of 43 U.S.C. § 666. The Tribes have since entered the case as amici curiae.
The scope of the lawsuit is, in a word, enormous. It seeks to determine all rights in the state to the Missouri River system, which includes the Missouri, Grand, Moreau, Cheyenne, Bad, White, Little Missouri, Keya Paha, and Ponca Rivers, and all surface and ground waters tributary thereto. It thus involves what is roughly the western two-thirds of South Dakota, and approximately 60,000 landowners.

ISSUES
1. Whether removal of state water adjudications is prohibited by 43 § 666?
2. Whether the presence of significant Indian water rights obliges this court to retain jurisdiction?
3. Whether a federal question appears on the face of the State's complaint?
4. Whether all defendants were required to join in the United States' removal petition?

*452 DISCUSSION

I.
The state devotes the greatest portion of its brief to the argument that the McCarran Amendment, 43 U.S.C. § 666, implicitly prohibits the removal of a water adjudication suit such as this to federal court. After a review of that statute and the case law interpreting it, this court can unearth no such prohibition.
First, the State points to the fact that the original text of 43 U.S.C. § 666 contained a provision which would have specifically allowed removal when the United States was joined in water adjudications. Adjudication of Water Rights: Hearing on S.B. 18 Before a Senate Comm. on the Judiciary, 82d Cong., 1st Sess. 5, 54. Several witnesses spoke in opposition to this provision, and § 666 was in fact enacted without any reference to removal in its language. From this, the State asserts, there is an "obvious" implication that Congress did not intend the United States to be able to remove general adjudication suits brought in state court.
This position cannot be sustained. It fails to take into account the general removal statute itself, 28 U.S.C. § 1441(a), which states that actions brought in state court over which a federal court would have jurisdiction may be removed "except as otherwise expressly provided by Act of Congress" (emphasis supplied.) The silence of § 666 on the subject of removal hardly brings this exception into play.
This same question was before the court in the case of In re Green River Drainage Area, 147 F.Supp. 127 (D.Utah 1956). That case noted that at the time § 666 was being considered by Congress, the National Reclamation Association was advocating a provision which would have barred removal in every case. This language was, of course, also not adopted. The Green River case concluded from this that "Congress did not intend to foreclose the jurisdiction of the federal courts, either in the first instance or by way of removal, over suits in which the United States was a party defendant, or a party plaintiff, where such jurisdiction would exist under other federal laws, sovereignty being waived." 147 F.Supp. 138. This court must agree with that conclusion. See also National Audubon Society v. Department of Water, 496 F.Supp. 499 (D.E.D.Cal.1980).
Second, the state argues that the holding in Colorado River Water Cons. Dist. v. U.S., 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), also implicitly prohibits removal of a general water adjudication. While that case does include a detailed discussion of § 666, it is not factually in point. In that case, the United States had brought suit in federal court in Colorado, seeking a declaration of its reserved rights to water in Colorado Water Division No. 7. The United States had previously participated in state proceedings to determine its water rights based on state law in several other of Colorado's water divisions. Following the commencement of the United States' action in federal court, an application was filed in state court to make the United States a party to state adjudication proceedings in Division 7 to determine both its state and federal claims. The defendants to the federal proceeding moved to dismiss the action brought by the United States, and the federal court granted the motion. This dismissal was upheld by the United States Supreme Court on the basis of what it called "considerations of `[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. 817, 96 S.Ct. 1246. The State in this case contends that this very narrow holding is decisive authority to remand a state action which was removed to federal court. Even accepting that Colorado River has any relevance to a motion to remand, this court finds that the factors set forth in Colorado River do not compel remand in this case.
These factors are:
1) The Desirability of Avoiding Piecemeal Litigation. This factor was given by the Supreme Court as the most important single factor. The problem that was present in the Colorado River case, however, is absent here. Instead of two parallel *453 proceedings taking place at the same time, the one in federal court being intended to determine only the rights of the United States while the one in state court had the purpose of determining the rights of all water users, here there is but one unified action. The only question presented by the State's motion to remand is where that one action will be tried.
2) The Order in Which Jurisdiction Was Obtained by State and Federal Courts. As the United States points out, all removed actions commence in state court. This factor would thus seem to have little, if any, relevance to the determination of this remand motion. In any event, the federal lawsuit in Colorado River interrupted a statewide process of state water adjudication that has been continuing for several years.[2] The State of South Dakota has had no general river system adjudications prior to this case.
3) Absence of Proceeding in Federal Court Beyond the Filing of a Complaint. The action has not progressed beyond the filing of a complaint in either state or federal court. Thus, while there is no particular need to preserve the continuity of proceedings in this court, neither does this factor provide any strong reason to send this case back to state court. As mentioned before, in Colorado River, there were ongoing state proceedings, compared here with only the filing of a complaint in state court and the removal of this same complaint to federal court.
4) Extensive Involvement of State Water Rights. It is quite obvious that there is an extremely substantial involvement of private water claims derived from state law in this case. Militating against this consideration, however, is the also quite obvious involvement of very significant federal claims. Beyond the United States' own reserved rights, the reserved rights of seven Indian tribes occupying large reservations will clearly play a critical role in the ultimate disposition of this case. At the same time, the South Dakota statutory method of water adjudication of SDCL 46-10 seems to lack the elaborate mechanisms described in Colorado River, which played a significant role in the Supreme Court's decision. While this factor does, to some extent suggest that a state court would be a better forum for this action, an order to remand cannot be based on this consideration alone.
5) Inconvenience of the Federal Forum. The State concedes in its brief that this factor lacks the significance it had in Colorado River. In that case, the federal court was three hundred miles away from the state court where the state adjudication would have taken place. In this case, the state and federal courts are separated by only a few blocks.
This court, then, finds nothing in its reading of Colorado River which would require a remand to state court.
Finally, the State argues that an "overwhelming" body of case law favors remand. There is, admittedly, a tendency in the cases which have considered the question to remand general water adjudications. Yet, this court does not find those cases to be so persuasive as the State would contend. State ex rel Reynolds v. United States, 408 F.Supp. 1029 (D.N.M.1975), occupies only one column of one page, and states only that "There is presently no federal question jurisdiction...." 408 F.Supp. 1030. The unpublished case of Wyoming v. United States, No. C77-039K (D. Wyoming, May 31, 1977), attached to the State's brief, consists only of findings of fact and conclusions of law. To the extent these opinions set forth a rule of law contrary to that reached here, this Court must respectfully disagree. A third case, cited by the State, In re Bear River Drainage District, 267 F.2d 849 (10th Cir. 1959), never considered the merits of the question, but merely held that an order to remand was not reviewable under 28 U.S.C. § 1447(d).
Neither are the two cases, Santa Margarita Mutual Water Company v. State Water Rights Board, 165 F.Supp. 870 (D.S.D.Cal. 1958) and In re Green River Drainage Area, *454 147 F.Supp. 127 (D. Utah 1956), which most directly address the question particularly helpful. Santa Margarita did not involve the extensive presence of reserved rights that characterizes this case and, in fact, all the rights claimed by the United States in that case appear to have been acquired by appropriation under state law. Thus, no federal question giving rise to removal was present. Similarly, there seems to have been a lack of significant involvement of reserved rights in the Green River case. See, e.g., 147 F.Supp. at 145. The court in Green River struggled in vain to find a federal question to justify removal. As discussed elsewhere in this opinion, this Court does not face a comparable problem.
But even though this Court has found that neither § 666 itself, nor the case law interpreting it, forbids the removal of this case, the inquiry is not yet completed.

II.
Amici strenuously argue that the mere presence of substantial Indian rights in this case places an obligation on this Court to retain jurisdiction. Amicus Rosebud Sioux Tribe devotes its entire brief to a discussion of the historical role of the federal courts in protecting Indian rights. It is alleged that the somewhat political nature of this lawsuit, and what the Rosebud Sioux Tribe calls "the traditional hostility of state courts to Indian rights," makes it impossible for the Indian claimants to get a fair hearing anywhere but in federal court.
This court cannot agree with that position. A similar argument was made by the United States in Colorado River and was disposed of by the Supreme Court in the following language:
... the Government's argument rests on the incorrect assumption that consent to state jurisdiction for the purpose of determining water rights imperils those rights or in some way breaches the special obligation of the Federal Government to protect Indians. Mere subjection of Indian rights to legal challenge in state court, however, would no more imperil those rights than would a suit brought by the Government in district court for their declaration, a suit which, absent the consent of the Amendment, would eventually be necessitated to resolve conflicting claims to a scarce resource. The Government has not abdicated any responsibility fully to defend Indian rights in state court, and Indian interests may be satisfactorily protected under regimes of state law.

424 U.S. at 812, 96 S.Ct. at 1243. (Emphasis supplied)

III.
The State argues that this case was improperly removed because no federal question which would give this court jurisdiction appears on the face of the complaint. This argument cannot be sustained.
It is a basic principle that the federal question must be presented by the plaintiff's complaint. Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The fact a complaint may not explicitly state that there is a federal question present does not defeat federal jurisdiction, however. A court may "take judicial notice of any federal laws necessarily brought into play by the allegations of the complaint; and it is immaterial that specific reference to such laws may be omitted in the pleading." Pocahontas Term. Corp. v. Portland Bldg. & Const. Tr. Co., 93 F.Supp. 217, 219 (D.Me.1950). See also E.W. Bowman, Inc. v. Norfolk and Western Railway Co., 403 F.Supp. 389 (D.W.D.Penn.1975).
The State's complaint alleges, in paragraph 4, that "the United States is in the process of acquiring water rights ... by appropriation under state law, by purchase, by exchange or otherwise." (Emphasis supplied) Paragraph 5 alleges that the United States "in its fiduciary or trustee capacity for and on behalf of [the Tribes] also claims to be the owner of ... water rights ... by appropriation under state law, by purchase, by exchange or otherwise." (Emphasis supplied). The reference to "or otherwise" is obviously meant to include rights acquired under the reserved *455 rights doctrine, and it takes no extensive analysis to determine that these arise under federal law. Cappaert v. United States, 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976); Arizona v. California, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963); Winters v. United States, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908). Colorado River left no doubt on this point when it said, citing United States v. District Court for Eagle County, 401 u.S. 520, 526, 91 S.Ct. 998, 1003, 28 L.Ed.2d 278 (1971), that "`the volume and scope of particular reserved rights, are federal questions....'" 424 U.S. at 813, 96 S.Ct. at 1244. And Colorado River also made it very clear that under both 28 U.S.C. §§ 1331 and 1345, a federal court does have jurisdiction "over controversies involving federal rights to the use of water." 424 U.S. at 809, 96 S.Ct. at 1242. The court is therefore satisfied that the requirements of 28 U.S.C. § 1441(b) have been met, insofar as the showing of a federal question is necessary.

IV.
Despite the fact that the United States' removal of this action has gotten this far, it still must satisfy one more technical requisite to save this case from remand. This, however, it fails to do. As the State has correctly pointed out, the removal petition must ordinarily be signed by all of the defendants. Gableman v. Peoria, D. & E. Ry. Co., 179 U.S. 335, 21 S.Ct. 171, 45 L.Ed. 220 (1900); Chicago, R.I. & P.Ry. v. Martin, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900). At the time the United States filed its removal petition, approximately sixty other defendants to this action had been served. Yet, none of these joined in the United States' petition.
It is argued that all defendants did not need to join in the petition for removal for three alternate reasons. The first of these is that the non-federal, non-Indian defendants are "merely nominal parties to this action whose joinder in a removal petition is unnecessary." To support this contention, however, the amici do no more than submit numerous newspaper articles reporting statements by the Attorney General that this action is "not necessarily a lawsuit against anyone" and that most landowners "will never need to go to court or hire a lawyer." The amici conclude from this that the real controversy is not between the plaintiff and all defendants, both non-Indian and Indian, but only between the plaintiff and the Indian defendants, with the non-Indian defendants just "along for the ride."
While it is true that "the presence of nominal or formal or unnecessary parties has no controlling significance for removal purposes," Bradley v. Maryland Casualty Company, 382 F.2d 415 (8th Cir. 1967), this Court cannot conclude that the non-Indian defendants to this action can properly be classified as "nominal or formal or unnecessary parties." In the leading case on this point, Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628 (1924), for example, the Salem Trust Company, with Massachusetts citizenship, brought an action against a Delaware corporation and the International Trust Company, another Massachusetts citizen, which was holding money for the Delaware company. In holding that the Delaware company could properly remove the action, the court said the International Trust Company was "not an indispensable party ... It has no interest in the controversy between the [plaintiff and the other defendants]. Its only obligation is to pay over the amount deposited with it when it is ascertained which of the other parties is entitled to it." 264 U.S. at 190, 44 S.Ct. at 267.
This cannot be said to be the situation with respect to the non-Indian defendants here. As the United States observes in its brief, a water adjudication such as this action
is an attempt to obtain a complete ascertainment of the existing rights to the use of water among the various water users in a particular basin. To the extent one claimant obtains an adjudicated right to use a portion of the water, the amount of water remaining for the other claimants is correspondingly less. *456 In view of this, can it be said that any holder of water rights included in the scope of this action is indispensable? If, as the amici argue, all non-Indian water rights are subordinate to the Indian rights, these rights will be profoundly affected by the determination of the extent of these Indian rights. If, on the other hand, there are some non-Indian rights prior in time to the Indian rights,[3] as this court believes is possible, then certainly the Indian rights cannot be properly adjudicated without reference to these. Either way, the non-Indian defendants can hardly be said to have "no interest" in the outcome of this controversy. Public statements by the State Attorney General, which may well have been intended to minimize the political unpopularity of joining members of his constituency as defendants in a lawsuit, cannot control this court's determination on this point.
Similar considerations oblige this court to reject the second reason given by the United States and the amici why all defendants did not need to join in the removal petition. This rationale is that the non-federal, non-Indian parties should be realigned as plaintiffs, Removal Cases, 100 U.S. 457, 25 L.Ed. 593 (1879), because the "real dispute is between the State  on behalf of holders of state water rights  and the United States  on behalf of water rights arising under federal law." The United States contends that the other defendants have a common interest in reducing the amount of water to which it may be determined that the United States and the Indian Tribes are entitled. While this may be true, this state of affairs is inherent in water rights adjudications. Just as the non-federal defendants may have an interest in reducing the water rights of the federal defendants, so do those non-federal defendants have an interest in reducing each other's water rights. The United States and the amici seem to assume that, but for the federal defendants' presence, there would be ample water available and the adjudication of rights would be a perfunctory process. On the state of the record now, this Court can certainly not share any such assumption. The amount of available water is obviously finite, and by the United States' own definition of water adjudication cited above, any time any party is granted a right to use water, there is that much less available for all the other parties. Presumably, the federal claimants together have an interest in reducing the rights of the non-federal claimants, the United States (acting for national forests, national monuments, etc.) on one side and the Indian Tribes taken together on the other side have competing interests, and each Indian tribe has an interest antagonistic to each other Indian tribe. All defendants have something to lose by this lawsuit, and nothing appears why some should be designated as plaintiffs, while others maintain the status of defendants, simply because some derive their rights from state law, and others derive their rights from federal law. Each individual party has a paramount interest in making his own water right as large and well-established as possible, to the exclusion of all others, and no matter which side of the lawsuit that party is placed, all other parties must be placed there alongside him, because they share that same interest. See, State of New Mexico v. Molybdenum Corp. of America, 570 F.2d 1364, 1366 (10th Cir. 1978). Inferences to the contrary that the United States and the amici draw from the public statements of the State Attorney General to landowners that "the State is here to protect whatever rights you already have" can be disregarded for the same reasons as given above.
Finally, the court comes to the third, and most arcane, argument, advanced mainly by the amici. This contends that the non-federal defendants did not need to be joined because the United States removed *457 the case against it as a "separate and independent claim" under 28 U.S.C. § 1441(c). This argument runs afoul of the formidable obstacle of American Fire and Cas. Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), which very narrowly construed § 1441(c), following that section's amendment in 1948, expressly stating that the purpose of the amendment was to reduce the number of cases that can be removed from state court. As 14 Wright, Miller & Cooper, Federal Practice and Procedure, p. 629 (1976) interprets Finn, "claims involving common questions and stemming from the same transaction do not qualify as separate and independent claims or causes of action ... there is but a single cause of action when a single plaintiff advances alternative claims against a number of defendants arising from an interlocked series of transactions...." Further, the treatise states, "the separate and independent claim or controversy must be wholly between the plaintiff and the defendant who is seeking removal; it must be capable of being determined between them and complete relief afforded without the presence of any other original parties to the action." 14 Wright, Miller & Cooper at p. 624. Returning once more to the United States' own characterization of this action, that "to the extent one claimant obtains an adjudicated right to use a portion of the water, the amount of water remaining for the other claimants is correspondingly less," it is difficult to see how a water adjudication action could ever be divided into "separate and independent claims." At least two cases have held that such a division cannot be made. Santa Margarita Mutual Water Company v. State Water Rights Board, 165 F.Supp. 870 (S.D.Cal.1958); In re Green River Drainage Area, 147 F.Supp. 127 (D.Utah 1956); see also Colorado River Water Cons. Dist. v. U. S., 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976).
Amici nonetheless contend that the cases of Evangelical Lutheran Church v. Stanolind Oil and Gas Co., 251 F.2d 412 (8th Cir. 1958) and Bonner v. Smith, 114 F.Supp. 895 (D.Okl.1953) suggest a contrary answer. Both of those cases indicated that separate and independent claims could be carved out against individual defendants in quiet title actions. Certainly, there would appear to be much similarity between a quiet title action and a suit to adjudicate water rights such as this. Both can be brought against numerous defendants with claims to a particular piece of property, and both have as their purpose the adjudication of the extent and validity of each claimant's rights. Yet, the similarity can only be taken so far.
The basic rationale for the cases that hold that quiet title actions can contain separate and independent claims is that all of the defendants to a quiet title action did not need to be joined. A separate lawsuit could have been brought against each defendant in his turn, wherever each defendant claimed from a different source of title, and that particular cloud could have been removed. The quiet title action is only a convenient method of settling all adverse claims at once. As the court in Evangelical Luthern Church, supra, put it,
An action to quiet title is indeed an effective method of adjudicating title to real property as against numerous defendants having different and diverse types of claims. Nevertheless, the form of the action should not be permitted to obscure the circumstances and does not merge the separate and independent claims into one.
251 F.2d at 416.
While it is true that the State could bring an action against first one and then another of the water rights holders in the Missouri River system, this defeats the very purpose of a general water adjudication. The State here is not so much trying to establish the validity of its own title to water as compared to all other claimants as would a plaintiff in a quiet title action, but is, instead, simply trying to determine the amount and priority of all the water claimants in that system. To do this effectively, all the existing claimants must join in the action. Otherwise, the State runs the risk that it has established the wrong priorities and quantities, destroying the effectiveness of its efforts. Once again the court must return to what is at stake here: a finite amount of water with numerous claimants. Each time one claimant's rights are recognized, *458 that much less is available for everyone else. For one party, even if it is the United States representing its own vast interests and those of the Tribes, to argue that the claim against it could be finally determined without the presence of all other defendants, is, under the circumstances here, illogical.
Further, it should also be noted that the line of cases[4] relied upon by Evangelical Lutheran Church and Bonner v. Smith on quiet title actions all pre-date the 1948 change in § 1441(c). This casts great doubt on their continued validity, as at least one case has implied, Rosen v. Rozan, 179 F.Supp. 829, 833, n. 11 (D.Mont.1959), and 14 Wright, Miller & Cooper at pp. 638-39, n.46, also suggest that the Evangelical Lutheran Church case erroneously applied § 1441(c).
Having concluded then, that the removing defendant in this case has offered no valid reason why all other defendants did not need to join in the removal petition, this court must find that this action has been improvidently removed to this Court. Therefore, plaintiff's motion to remand will be granted.
NOTES
[1] Proceedings leading to a decision of the motion were held in abeyance by stipulation of the parties while the parties negotiated for the resolution of certain issues involved in this removal from June 1980 to September 1981.
[2] See 424 U.S. at 804, 805, 819-20, 96 S.Ct. at 1239, 1240, 1247-48.
[3] The argument could be made that the water rights of the separate Indian reservations date from the time of their creation as separate entities in the Act of March 2, 1889, 25 Stat. 888. See Arizona v. California, 373 U.S. 546, 600, 83 S.Ct. 1468, 1497, 10 L.Ed.2d 542 (1963). This could make these reservations' priorities subordinate to the water rights acquired by non-Indians prior to that time, e.g., the substantial water rights acquired by Homestake Mining Company in the Black Hills in the late 1870's.
[4] McMullen v. Halleck Cattle Co., 193 F. 282 (C.C.D.Nev.1910); Carothers v. McKinley Mining & Smelting Co., 116 F. 947 (C.C.D. Nev.1902); Bates v. Carpentier, 98 F. 452 (C.C.N.D.Cal.1899); Bacon v. Felt, 38 F. 870 (C.C.N.D.Iowa 1889); Stanbrough v. Cook, 38 F. 369 (C.C.N.D.Iowa 1889); Goldsmith v. Gilliland, 24 F. 154 (C.C.D.Or.1885); but see Davey v. Yolo Water & Power Co., 211 F. 345 (D.N.D.Cal.1913).