**NATIONAL AUDUBON SOCIETY et al.,**
**Plaintiffs/Cross-Defendants,**

v.

**DEPARTMENT OF WATER & POWER**
**OF the CITY OF LOS ANGELES,**
**Defendant/Cross-Complainant,**

v.

**UNITED STATES of America et al.,**
**Cross-Defendants.**

**Civ. No. S–80–127 LKK.**

United States District Court,
E. D. California.

July 17, 1980.

500

F. Bruce Dodge, Palmer Brown Madden, Morrison & Foerster, San Francisco, Cal., for plaintiffs/cross-defendants.

Burt Pines, City Atty., Edward C. Farrell, Chief Asst. City Atty., for Water & Power, Kenneth W. Downey, Asst. City Atty., Edward A. Schlotman, Deputy City Atty., Los Angeles, Cal., Donald D. Stark, Irvine, Cal., for defendant/cross-complainant.

George Deukmejian, Atty. Gen., N. Gregory Taylor, Jan S. Stevens, Asst. Attys. Gen., Bruce S. Flushman, Deputy Atty. Gen., San Francisco, Cal., for cross-defendants State of California, State Lands Comm.

Herman Sillas, U. S. Atty., Robert Browning Miller, Asst. U. S. Atty., Sacramento, Cal., for cross-defendant United States of America.

## ORDER

KARLTON, District Judge.

On May 21, 1979, plaintiffs, NATIONAL AUDUBON SOCIETY, FRIENDS OF THE EARTH, the MONO LAKE COMMITTEE, the LOS ANGELES AUDUBON SOCIETY, and four individuals, filed suit against the Los Angeles Department of Water and Power (hereinafter sometimes referred to as the "DEPARTMENT" or "DWP") in the Superior Court of the State of California for the County of Alpine. The gravamen of that lawsuit is plaintiffs' assertion that the defendant's diversion of water from the Mono Lake Basin is having a serious deleterious effect on the Basin's environment. The complaint seeks relief under five causes of action: Violation of the public trust, violation of California Constitution Article

XVI, section 6 (prohibiting a gift by the state of a state asset), a quiet title action to establish the public trust rights in the water of the Basin, public and private nuisance (in the form of mud and dust resulting from the lowering of the lake level), and violation of California Constitution, Article X, section 4 (which prohibits obstruction of navigable waters).

On June 22, 1979, the defendant answered the complaint in the superior court. After extensive discovery and the setting of tentative pretrial and trial dates, the DEPARTMENT sought and was granted leave to file a cross-complaint. It is this cross-complaint naming the United States, among others, as a cross-defendant which gave rise to a petition to remove the matter to this court, the instant motion to remand, and the government's motion to amend the removal petition.

The DEPARTMENT'S cross-complaint asserts four causes of action. The first cause of action seeks adjudication of the Basin's water rights, and the second is an action to quiet title to those rights.[1] These two causes of action are brought against all plaintiffs and all appropriators of water within the Basin. In all, 117 cross-defendants are joined in these first two causes of action. Among the appropriators are alleged to be two federal agencies, the Forest Service and the Bureau of Land Management.

The Third Cause of Action requests declaratory relief relative to the propriety of the DEPARTMENT'S use of the water under the California Constitution. The DEPARTMENT also seeks a declaration that if the United States has jurisdiction over California's navigational trust, that by statute and executive order the United States has consented to the impairment of the so-called navigational trust. The final cause of action is for declaratory relief regarding plaintiffs' nuisance cause of action. In essence the DEPARTMENT seeks a declaration that the alleged nuisance created by

the exposed bed is not attributable to the DEPARTMENT but to the owner of the bed who it is alleged is the State of California. The United States is not named in this cause of action.

The United States originally sought removal pursuant to 28 U.S.C. § 1441 asserting that the cross-complaint seeks adjudication of water rights, that the government claims title to the lake bed, and that original jurisdiction exists under 28 U.S.C. § 1346(f). The DEPARTMENT then moved for remand asserting that a joint cause of action was alleged and that all defendants failed to join in the petition for removal. See *Chicago R. I. & Pacific RR Co. v. Martin* (1900) 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055.

In addition to filing an opposition to remand, the United States filed a motion to amend the petition for removal. The amendment seeks to predicate removal pursuant to 28 U.S.C. § 1442(a), the United States having abandoned § 1441 as a basis for removal at oral argument on the remand motions.

The issues presented are both complex and subtle. First, the Court is called upon to determine whether, under the circumstances, the government may amend its petition to remove. I have determined that it may. Secondly, I have determined that the McCarren Amendment does not preclude removal. Finally, I have determined that because three of the four causes of action relate only to title and rights of the government, they could not be independently removed; however, since one cause of action is predicated upon "acts" of an "agency" and that for § 1442(a)(1) purposes an agency is a person, the entire action is removable and remand will be denied at this time.

## A. MOTION TO AMEND

Section 1653 of Title 28 provides that "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." This section has been

---

1. There is much dispute in the briefs relating to a proper characterization of the complaint. That issue does not seem particularly relevant to a characterization of the cross-complaint which, after all, is the pleading under which removal is sought.

authoritatively construed to apply "to removed action [sic] as well as those initiated in the United States District Courts." *Barrow Development Co. v. Fulton Insurance Co.* (9th Cir. 1969) 418 F.2d 316, 317. Although this section has been liberally construed where cases originate in the district courts, see, e. g., *Moore v. Coats Co.* (2d Cir. 1959) 270 F.2d 410; *McGovern v. American Airlines, Inc.* (5th Cir. 1975) 511 F.2d 653; *Brennan v. University of Kansas* (10th Cir. 1971) 451 F.2d 1287, the Ninth Circuit has held that a somewhat different approach is required in a removal context. *Barrow, supra.* Reasoning that "since removal must be effected by a defendant within 30 days after receiving a copy of the complaint (28 U.S.C. § 1446)," the circuit court determined that "the removal petition cannot be thereafter amended to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made." 418 F.2d 316, 317.

The DEPARTMENT argues that the amendment, shifting as it does from one provision of the code to another, implicating as it must different legal theories and different parties, cannot be viewed as merely clarifying defective allegations. Superficially the DEPARTMENT'S argument has appeal, nonetheless it cannot be sustained.

■ The essential problem with the DEPARTMENT'S argument is the narrowness of its focus relative to what the court may consider in determining whether the amendment seeks to clarify defective allegations or whether it seeks to add allegations of substance. In essence, the DEPARTMENT seeks to limit review for remand purposes to the petition and the motion to amend the petition. It appears that such a limited examination is erroneous. In *Willingham v. Morgan* (1969) 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396, the Supreme Court reviewed the entire file including the material appearing in petitioners' affidavits in support of their motion for summary judgment in order to determine whether

the facts of the case came within the provisions of the removal statute there in question (there, as here, Section 1442(a)(1)). In a footnote the Court noted that "this material *should have* appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition *as if* it had been amended to include the relevant information contained in the later filed affidavits." Id. at 407 n.3, 89 S.Ct. at 1816 (emphasis added.) It has been observed that for purposes of examining the propriety of amendment, the court's determination is made "upon the face of the petition and of the *whole record* of the state court . . . ." *Powers v. Chesapeake and Ohio RR* (1898) 169 U.S. 92, 101, 18 S.Ct. 264, 267, 42 L.Ed. 673. See also *Heckleman v. Yellow Cab* (1942) 45 F.Supp. 984. Thus in determining whether the amendment seeks merely to cure defects in form rather than alleging new substance, the court must review the entire file to determine what the file fairly reflects at the time it considers the motion to amend.

■ The United States proposes essentially two additions to its present petition. As noted, it first asserts that the controlling section is not Section 1441 but rather Section 1442(a)(1). In order to support its Section 1442(a)(1) allegation, the government alleges in its amended petition that the Bureau of Land Management acts under the direction of the Secretary of Interior and the Forest Service acts under the direction of the Secretary of Agriculture. It is true that neither fact is alleged either in the cross-complaint or in the original petition for removal. It is equally clear however that the court may take judicial notice that the two federal agencies act under the direction of the Secretaries of Interior and Agriculture, FRE 201. The Federal Rules of Evidence, of course "govern proceedings in the courts of the United States," FRE 101, and "Judicial notice may be taken at any stage of the proceedings." FRE 201(f).[2]

---

**2.** Whether such judicial notice is viewed as a question of the recognition of a law as a fact (see cases collected at 1979 pocket part, Vol.

21, Wright & Miller, *Federal Practice and Procedure*, 62) or a "legislative fact" rather than an "adjudicative fact" (see comments of the

■ Once it is recognized that the necessary "factual allegations" omitted from the petition are inherent in the allegations of the cross-complaint, the change from Section 1441 to Section 1442(a)(1) is no more than a shifting of legal theory and thus may be properly viewed as merely a clarification of a defective allegation. (See 28 U.S.C. § 1653; Wright & Miller, *Federal Practice and Procedure* § 3733, p. 736. See also Wright & Miller, § 1206, pp. 77–78.)

The DEPARTMENT also argues that amendment should be denied because Section 1442(a)(1) removal is inappropriate. It appears to the court that that argument should be treated as a matter on the merits rather than as a question of amendment of the petition. Accordingly, the court will grant the motion to amend.

## B. THE EFFECT OF THE McCARREN AMENDMENT

The McCarren Amendment, 43 U.S.C. § 666, provides consent for suit against the United States in the courts of the several states "where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law . . . ." DWP suggests that the statute precludes removal. The argument does not appear well taken.

■ The purpose of the McCarren Amendment was to permit joinder of the United States in a state court suit seeking to adjudicate the rights of various appropriators of water. *Dugan v. Rank* (1962) 372 U.S. 609, 617–19, 83 S.Ct. 999, 1004–05, 10 L.Ed.2d 15. Although it permits joinder, it speaks not at all to the question of removal. It appears relatively clear that the McCarren Amendment does no more than create concurrent jurisdiction. *Colorado Water Conservation Dist. v. United States* (1976) 424 U.S. 800, 808–09, 96 S.Ct. 1236, 1241–42, 47 L.Ed.2d 483. As such, the McCarren Amendment, like similar statutes, neither permits nor prohibits removal. Cf. *Sarner v. Mason* (3d Cir. 1955) 228 F.2d 176, 178, cert. denied 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956). I thus conclude that resolution of the removal issue cannot rest on the McCarren Amendment.[3]

## C. THE APPLICABILITY OF 28 U.S.C. § 1442(a)(1)

Pursuant to the amended petition, the United States now asserts that removal may be accomplished under the "federal officers" provisions of 28 U.S.C. § 1442(a). That section provides in pertinent part "A civil action . . . commenced in a state court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) any officer of the United States or any agency thereof, or persons acting under him, for any act under color of such office . . . ."

Plaintiff AUDUBON and the United States argue that the word "persons" in the phrase "persons acting under" federal officers, should be interpreted to include "juridical" persons, and accordingly "persons" would include agencies and thus render the action removable.

The DEPARTMENT, arguing plain meaning, contends that a person is a human being and remand is required.

It appears to the court, however, that the issue need not be reached as to three of the four causes of action alleged in the cross-complaint. Assuming arguendo that agencies are persons for § 1442(a)(1) purposes, nonetheless removal of the First, Second and Fourth Causes of Action appears improvident and remand would be required.

### 1. *Rights and Acts*

■ In the instant case the first two causes of action of the cross-complaint seek a determination of water rights. It is al-

---

Advisory Committee), the effect is the same. The court may notice what is in fact the legal relationship between the agencies and the Secretaries.

3. Accordingly, this court must respectfully decline to follow *New Mexico v. United States* (D.N.M.1975) 408 F.Supp. 1029 to the degree it may be read as suggesting that the McCarren Amendment precludes removal.

leged that inasmuch as the United States is an appropriator of water, if plaintiff AUDUBON prevails on its complaint, the rights of all appropriators, including the United States, will be affected and will have to be redetermined. Thus, if the court understands the cross-complainant's argument correctly, DWP alleges that it is not the act of taking water that is implicated by its cross-complaint, but rather the right to take water. Accordingly, it argues that at least at present no act within the meaning of section 1442 is implicated or, in any event, an insufficient nexus between an act and the cross-complaint presently exists.

The issue may thus be seen as follows: DWP asserts that in the event AUDUBON prevails on its complaint, however and whatever theory is employed in prevailing, one effect will be a reduction in the right of some or all appropriators to take water. That is, that the effect of plaintiff's prevailing is not merely to shrink DWP'S piece of the pie but to shrink the entire pie and thus shrink everyone's piece, or to eliminate those appropriators who are junior to DWP. In this sense the Government's taking of the water (an act) is implicated. However, it is not the actual taking which is in issue in the cross-complaint, but rather the extent to which the agency's *right* to take the water will be litigated. It appears to me that the DEPARTMENT'S argument is well taken. However broad a reading of Section 1442 is required by *Willingham v. Morgan* (1969) 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (see 2, infra), a determination of passive abstract rights does not reasonably seem to be "A civil action . . . commenced . . . against . . . any officer . . . for any act . . . ." Thus I find that neither of the first two causes of action may be removed under 28 U.S.C. § 1442.[4]

The United States also argues that its right as asserted owner of the bed is implicated in the Fourth Cause of Action. This "cause of action" is indeed puzzling since it appears to be no more than an affirmative defense to the complaint in nuisance. Even so viewed, however, the Government's title is implicated. For the reasons set forth above, however, mere title would be insufficient to justify removal. Moreover, since the Fourth Cause of Action is directed to the State of California only, whatever else is true, it is not as required by Section 1442(a)(1) "a civil action or criminal prosecution commenced in a state court against any of the following persons." Thus the Fourth Cause of Action is also insufficient to predicate removal.[5]

Finally, I turn to the Third Cause of Action—an action in declaratory relief against California, the United States and plaintiffs. Here I am faced with a count which the pleader characterizes as badly pled; in effect the DEPARTMENT here acknowledges that the count fails to state a cause of action (i. e., the DEPARTMENT characterizes its count as an affirmative defense to the complaint rather than a separate count). Nonetheless, the propriety of removal is not dependent upon the claim stating a cause of action. It is not at all unusual for the Government in section 1441 cases to first remove the action and then seek to dismiss. If the action is removable but defective, the United States has the right to test the viability of the suit in a federal forum. *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). Nonetheless, the fact that we do not deal with a well pled claim makes resolution even more uncertain.

---

4. Given the context, I of course do not pass upon the question of whether under the circumstances a true case or controversy ripe for determination is tendered by the first two causes of action.

5. The Court does not mean to suggest that the United States does not have an interest in the nuisance action, or the Fourth Cause of Action, only that defendant has not sued the United

States for maintaining a nuisance, nor has the DEPARTMENT cross-complained for indemnity. It may well be that the United States should intervene in that action (at this point it has not sought to do so). Whether the United States could intervene and, if so, whether it could then remove is simply not before the Court.

The Third Cause of Action, insofar as it implicates the United States, alleges by incorporation Paragraph 7 of the general allegations. Therein the DEPARTMENT alleges cross-defendants herein are: "(a) *United States of America* —sued herein by reasons of its rights or claims of rights to waters of the Mono Basin, by reason of the activities of Forest and BLM . . . ."

Under the rubric Acts and Practices of the parties, plaintiffs allege:

(a) *Forest Service.* The great majority of the lands within Mono Basin are owned by the United States. Approximately half of such lands are within Inyo National Forest, under the jurisdiction of the Forest Service. In connection with the development of such forest lands, the Forest Service has appropriated water, pursuant to California law, from a series of named and unnamed streams and springs within Mono Basin, as listed on Exhibits "B" and "C". All of said appropriations are for beneficial uses and are utilized to facilitate and expand recreation facilities and uses of the national forest.

(b) *BLM.* The remainder of the United States lands in Mono Basin are under the jurisdiction of BLM. By Executive Orders, the first being in 1929, the Congressional legislation in 1931, the Federal government's lands under BLM jurisdiction in Mono Basin were withdrawn from entry for the primary purpose of protecting the water rights of the City of Los Angeles. BLM holds *and administers* said lands for said purposes, among others. BLM owns certain artesian wells and springs which are situate on Federal lands within Mono Basin from which it diverts water for overlying use, and as to which it asserts a water right not inconsistent with the purposes of said prior withdrawals. (Emphasis added.)

Finally, in the body of the Third Cause of Action plaintiff alleges:

40. *United States.* The United States, by Acts of Congress and Executive Orders, has recognized the paramount importance of protection and preservation of water rights of the City of Los Angeles in Mono Basin. To the extent, if any, that the United States has jurisdiction over the states' exercise of the Navigation Trust, Congress has consented to the impairment of the navigable waters of Mono Lake, for purposes consistent with protection and preservation of DWP's appropriative rights.

Thus it may be seen that in essence DWP has alleged a dispute as to rights and duties arising by virtue of various statutes and Executive Orders. Nonetheless the DEPARTMENT has sued the United States "by reason of the activities of BLM and the Forest Service." Moreover the DEPARTMENT asserts that BLM "administers said lands" for the purpose of protecting the water rights of the City of Los Angeles. I must now consider whether under these circumstances the suit is "for an act" of the agency.

The suit is for declaratory relief. By statute Congress provided for "such a remedy" in the case of an "actual controversy" and permits the court to declare "the rights and other legal relations" of the parties. 28 U.S.C. § 2201.[6]

Thus in form it appears that the suit is only as to rights and, by reasoning analogous to the disposition of the other causes of action, it may be argued that an act is not "sued for." It appears to the court, however, that the analogy is not quite apt.

Federal Rule of Civil Procedure 57 provides that "the existence of another adequate remedy does not preclude a judgment for declaratory relief . . . ." Accordingly, if all declaratory relief actions were not subject to removal under Section 1442(a)(1) because they only sought a declaration of rights, removal under the statute could be defeated by a mere pleading

---

**6.** The question which I deal with in this part of the opinion, i. e., whether a suit in declaratory relief may be removed under § 1442(a)(1) is examined in light of the federal declaratory relief statutes and rules because removal and remand are questions of federal law. *Grubbs v. General Electric Corp.* (1972) 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612.

choice. A state litigant could seek a declaration of his rights relative to damages claimed by the acts of a federal officer and Section 1442(a)(1) would not apply—such cannot be the law. The test must be whether the lawsuit, whatever its form, is predicated upon an act of a statutorily defined "person" which is done under the color of office. Here the DEPARTMENT alleges laws passed by Congress (clearly not an *act* of the person), Executive Orders (again not an act of *the* person) and "administration" of lands by the BLM on behalf of the City of Los Angeles. Finally, the DEPARTMENT has sued the agency by virtue of certain otherwise unspecified "activities of BLM and the Forest Service." Whatever those activities are, and however the administration was accomplished, each appear to have a sufficiently active quality to constitute "acts."

 The removal statute not only requires that there be an "act" but that the suit be "for" the act. The court has examined the complaint and finds it difficult to relate the "acts" which are pled in the complaint with the declaration of rights sought. Thus a question arises as to whether the court may merely disregard the general allegations incorporated into the Third Cause of Action as surplusage. I think not. Given federal standards of notice pleadings, it seems to me the better course is for the court to take the pleader at his word. If the pleader thinks the acts pled are in some fashion connected to the lawsuit, the Government is entitled to test its defenses in a federal forum. Clearly, if this were a Section 1441 removal where doubts are to be resolved against removal (*Libhart v.*

*Santa Monica Dairy Co.* [9th Cir. 1979] 592 F.2d 1062), remand would be appropriate. However, as I explain (2, infra), where removal is predicated on Section 1442, a different standard must be applied, one which will effectuate its purpose of providing a federal forum for the United States government and its officers.

Having found that the Third Cause of Action sufficiently implicates acts of a federal agency to satisfy Section 1442(a)(1), I must now decide what appears to be a question of first impression, is an agency a "person" for Section 1442(a)(1) purposes?

### 2. Agencies and Persons

 As noted, AUDUBON argues that the word "person" in the phrase "person acting under" should be interpreted to include juridical persons and thus agencies.[7] DWP essentially paraphrasing Gertrude Stein, argues "a person is a person is a person" and remand is required.[8]

 The starting point in construing any statute is, of course, the language of the statute itself. *Andrus v. Allard* (1979) 444 U.S. 51, 100 S.Ct. 318; 62 L.Ed.2d 210. Moreover, it is also true that a statute will ordinarily be viewed as using the common meaning of a word. *Perrin v. United States* (1979) 444 U.S. 37, 45, 100 S.Ct. 311, 315, 62 L.Ed.2d 199. Nonetheless, in determining the existence of an ambiguity the court cannot ignore the large body of precedent which has attributed a legal meaning to the word "person" other than its common one. (See *Dawson Chemical Co. v. Rohm & Haas* Co. —— U.S. ——, ——, 100 S.Ct. 2601, 2608, 65 L.Ed.2d 696, 706 (1980). See Footnote 7, supra). It appears to the court

---

**7.** The court does not share AUDUBON'S apparent confidence that there is a well defined group of "juridical" persons. While it is clear that for some purposes "persons" may well include everything from corporations (*Borreca v. Fasi* (D.Haw.1974) 369 F.Supp. 906, 911), to municipalities (*Monell v. N. Y. City Dept. of Social Services* (1978) 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611), to foreign governments (*Pfizer, Inc. v. Govt. of India* (9th Cir. 1976) 550 F.2d 396, aff'd, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978), the decisions appear relatively ad hoc and depend upon the intent of the

legislature as expressed in particular statutes. Nonetheless as I point out, these cases have an important bearing on resolution of the issue at bar.

**8.** The DEPARTMENT's position that the word "person" should be equated with "human being" has a real appeal to common sense. However, in the field of removal and remand common sense does not always appear to be the test—sometimes an application of uncommon sense is required. On the other hand, it is common sense which suggests the world is flat.

that at least in order to determine the existence of a plain meaning the court must look to the cases which have interpreted the word. When I do so I cannot find the meaning plain and unambiguous.[9] Where, as here, a statute is ambiguous (either because the legislatively selected words are inherently ambiguous or by virtue of judicial adumbration) resort may be had to extrinsic means of determining legislative intent. *United States v. Curtis Mines, Inc.* (9th Cir. 1980) 611 F.2d 1277. I now begin the task of such a determination.

An examination of the previous cases which have construed Section 1442 does not provide guidance in resolving the issue. The case law on the question of the general applicability of Section 1442(a)(1) to federal agencies is scanty and inconclusive. In *James River Apartments v. Federal Housing Administration* (D.C.Md.1955) 136 F.Supp. 24, 27, the district court found that HUD could remove under Section 1442(a)(1) relying, as has been observed, upon "somewhat ambivalent precedent." Wright & Miller, *Federal Practice and Procedure*, § 3727, p. 690. Conversely, in *KCPO Employees Credit Union v. Mitchell* (W.D.Mo. 1976) 421 F.Supp. 1327, the United States Postal Service was not permitted to remove under the statute. Neither case directly resolves the issue which is presented here. Both cases required the courts to construe the words "or any agency thereof" in Section 1442(a)(1) in determining whether removal was proper. In the present motion, on the other hand, the United States and AUDUBON seek to have the agency considered "a person acting under [the federal officer]."

Having found no case on point I next address the mode of construction of the statute. The Supreme Court has commented that Section 1442(a)(1) must not be given a narrow, grudging interpretation. *Willingham v. Morgan* (1969) 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396.[10]

The Supreme Court observed that "the federal government 'can act only through its officers and agents, and they must act within the states'," Id. at 406, 89 S.Ct. at 1815, and that Section 1442 embodies a recognition "that federal officers, and indeed the *federal government itself* require the protection of a federal forum." Id. at 407, 89 S.Ct. at 1816 (Emphasis added.)

▇ It is with these principles in mind that the court addresses the issue presented. As the Supreme Court notes, the United States can only act through its officers and employees (i. e. human beings). In like manner its agencies may only act through human beings. Although clearly the historical origin of Section 1442 was the protection of individual officers, its purpose has been broadened by amendment and now may be seen to rest on a "federal interest" (*Willingham, supra* at 406, 89 S.Ct. at 1815) and is an "incident of federal supremacy" (Id. at 405, 89 S.Ct. at 1815). Given the values now recognized as the underpinning of Section 1442, and the broad reading the court must give the section, it appears that the word "person" might reasonably be read to encompass the government's agencies.

▇ It has been suggested by the DEPARTMENT that a reading of the statute as broadly as the court has suggested herein

---

9. I recognize that in some sense looking to precedent to determine the existence of an ambiguity puts the cart before the horse; however, so does looking to the dictionary to discover the common meaning. In this sense the plain meaning rule is itself ambiguous (see, e. g., *Church of Scientology v. United States Dept. of Justice* (9th Cir. 1979) 612 F.2d 417, 421) and is something of a conundrum. (See p. 497 of Webster's Third New International Dictionary for the multiple meanings of the word "conundrum").

10. The DEPARTMENT in its brief makes much of the fact that the defendants in *Willingham* were human beings and thus, whatever else is true, were "persons" within the meaning of the section. DWP misses the point. Of course it is true that in general the value of precedent is measured by the facts of the case. What is important in this context, however, is the *manner* of resolving the issue, whether the statute is to be read broadly or narrowly; whether, as with most removal statutes, doubt is to be resolved against removal, or whether a different rule applies.

would authorize removal whenever the United States is a litigant. It is argued that such a result is incongruous inasmuch as the district court does not have original jurisdiction whenever the United States is a litigant. The answer to that is short. Removal jurisdiction may indeed be broader than original jurisdiction. *Mir v. Fosburg*, No. 78–1103, —— F.2d —— (9th Cir. Jan. 22, 1980) Slip Op. p. 1705.[11]

Moreover, as this court's analysis of the first two causes of action demonstrates, removal will not always be available to the federal government. The two other components of removal, i. e., an "act" and "under color" do provide some limits. In this case, however, I find that all three components have been satisfied and the Third Cause of Action is removable pursuant to the statute.[12]

3. *Removable and Non-Removable Claims*

■ Having concluded that at least one claim is removable under Section 1442, I must determine the effect of that determination on the balance of the action. It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims. See *Murphy v. Kodz, supra*; 1A Moore's *Federal Practice* ¶ 0.164[1]; 14 Wright & Miller, *Federal Practice and Procedure* § 3727 at pp. 691–92; cf. *Howes v. Childers* (E.D.Ky.1977) 426 F.Supp. 358, 359. Whether this court should continue to exercise jurisdiction over the non Section 1442 claims in the event the Section 1442 claim is dismissed, see *id.,* is a question that may be for another day.

Accordingly, IT IS ORDERED THAT:

1. The motion to amend the removal petition is granted;

2. The motion to remand is denied.

11. Given the principles of supremacy which underlie Section 1442, a simple statute providing a right of removal whenever the United States is a party makes common sense. Unfortunately, Congress has not seen fit to provide such jurisdiction.

12. I certainly realize that the government's victory here may be phyrrhic and evanescent. If,

as the DEPARTMENT suggests, it intends to dismiss the third cause of action, a serious question may arise as to this Court's retaining jurisdiction. (Cf. *Murphy v. Kodz* (9th Cir. 1965) 351 F.2d 163). Be that as it may, this case is hard enough without resolving questions not ripe for consideration.