**Barbara SMILEY, On Behalf of Herself and All others Similarly Situated, Plaintiff,**

v.

**CITIBANK (SOUTH DAKOTA), N.A., Defendant.**

No. CV 92–4688 KN.

United States District Court, C.D. California.

Jan. 13, 1993.

See 26 Cal.App.4th 1767, 32 Cal.Rptr.2d 562.

---

*ORDER DENYING DEFENDANT CITI-
BANK'S MOTION REQUESTING
LEAVE TO AMEND ITS REMOVAL
PETITION AND GRANTING PLAIN-
TIFF'S MOTION TO REMAND*

KENYON, District Judge.

This case comes before the Court on Defendant Citibank's Motion Requesting Leave to Amend its Removal Petition and Plaintiff Barbara Smiley's Motion to Remand. After thorough review of the motions and the papers filed in support of and in opposition thereto, the Court **DENIES** Citibank's Motion to Amend its Removal Petition and **GRANTS** Smiley's Motion to Remand this case to the Superior Court of the State of California.[1] The Court explains its reasoning in the discussion below.

---

1. The Court originally scheduled to hold a hearing on these motions on November 2, 1992.

After reviewing the papers, however, the Court concluded that it could resolve this case without

## I. *DISCUSSION:*

### 1. *Procedural History*

Plaintiff Barbara Smiley filed this action against Citibank (South Dakota), N.A. on July 7, 1992, seeking damages and injunctive relief on behalf of herself and all other similarly situated persons who have owned or currently own Citibank issued credit cards and have been charged a late charge on their credit card account.[2] The plaintiff alleges, among other things, that Citibank's practice of charging late fees of up to $15.00 per month violates California Civil Code § 1671 and that Citibank has defrauded the public by failing to disclose in its long-term advertising, promotional and marketing campaign that these late charges are illegal and unconscionable. *Complaint* at ¶ 42. Plaintiff is seeking compensatory and punitive damages; the imposition of a constructive trust upon Citibank's allegedly "ill-gotten gains"; and injunctive relief. The summons and complaint were served on Citibank on July 15, 1992.

Defendant Citibank, a South Dakota corporation, subsequently filed a Notice of Removal on August 5, 1992, pursuant to 28 U.S.C. § 1441(a) and (b) and 28 U.S.C. § 1446. In its petition, Citibank asserts that removal is warranted under § 1441(a) because this Court had diversity jurisdiction over the action.[3] In response, Smiley filed a motion to remand this action to state court on August 26, 1992, asserting that this Court lacks diversity jurisdiction because the amount in controversy requirement under 28 U.S.C. § 1332(a) has not been satisfied.

Then, on September 21, 1992, Citibank filed a motion for Leave to Amend its Removal Petition by adding an allegation that the plaintiff's state law claims were completely preempted by the National Bank Act.

In the discussion below, the Court will first address Citibank's Motion for Leave to Amend its Notice of Removal and then discuss plaintiff's Motion to Remand.

### 2. *Citibank's Request for Leave to Amend*

Section 1446(b) of Title 28 requires defendants to file a notice of removal within thirty days after being served with the complaint. 28 U.S.C. § 1446(b). In this case, it is undisputed that Citibank filed its initial Notice of Removal within the applicable limitations period; Citibank was served with Smiley's complaint on July 15 and filed its notice of removal twenty-one days later, on August 5, 1992. Now, however, Citibank moves to amend its petition by adding an allegation that the plaintiffs' state law causes of action are completely preempted by the National Bank Act and that removal is thus warranted by 28 U.S.C. § 1441(b), which allows defendants to remove a case to federal court when the district court's original jurisdiction is founded on a claim arising under federal law. Smiley asserts that this amendment is untimely. The Court agrees and therefore denies Citibank's Motion.

■ It is well-settled that the defendant's notice of removal may be amended freely prior to the expiration of the initial thirty-day period established by § 1446. *Richardson v. United Steelworkers of Amer-*

the aid of oral argument and, accordingly, vacated the scheduled hearing. Defendant Citibank subsequently filed a Request for Oral Argument on October 30, 1992. Citibank urged the Court to hear oral argument because each motion presents issues of first impression and because Citibank's claim that the plaintiffs' state causes of action are completely preempted by the National Bank Act presents issues of great public importance. While the Court agrees that these motions raise interesting and important issues, many of which have never been directly and conclusively decided by the Ninth Circuit, the Court believes that the issues have been thoroughly briefed by the parties and therefore denies Citibank's request for oral argument.

**2.** Although the alleged class has yet to be formally certified, the Court treats the plaintiffs as a class for the purpose of determining plaintiffs' motion to remand. The alleged class consists of all persons with California billing addresses who have been charged a late charge in connection with the use of a Citibank credit card issued by Citibank. *Complaint* at ¶ 11.

**3.** Although Citibank's original petition cites both § 1441(a) and (b) as bases for jurisdiction, Citibank's argument focuses solely on its claim that this Court has *diversity* jurisdiction over the action; Citibank fails to make any allegations that this Court's jurisdiction arises under the laws or treaties of the United States as required for removal under § 1441(b). *See* Discussion *infra*.

*ica,* 864 F.2d 1162 (5th Cir.1989), *cert. denied* 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990). After the first thirty days, however, the cases indicate that the petition may be amended only to set out more specifically grounds for removal that already have been stated, albeit imperfectly, in the original petition; new grounds may not be added and missing allegations may not be furnished.

14A C. Wright, A. Miller, E. Cooper, *Federal Practice & Procedure* § 3733, at 537–538 (1985). The majority of courts, for example, allow defendants to amend "defective allegations of jurisdiction" in their notice as long as the initial notice of removal was timely filed and sets forth the same legal grounds for removal. *Barrow Development Company v. Fulton Insurance Company,* 418 F.2d 316, 318 (9th Cir.1969) (permitting amendment of removal petition to cure inadequate allegation of the citizenship of the defendant corporation).[4] When defendants attempt to assert totally new grounds for removal or "to create jurisdiction where none existed", however, the courts uniformly deny leave to amend. *Rockwell International Credit Corporation v. United States Aircraft Insurance Group,* 823 F.2d 302 (9th Cir.1987).

■ Citibank asserts that the Ninth Circuit has rejected strict restrictions on leave to amend and that it is therefore entitled to amend its petition pursuant to 28 U.S.C. § 1653, which permits "[d]efective allegations of jurisdiction" to be amended in the trial or appellate court, well after the expiration of the time limit set by § 1446. Citibank contends that the only reported opinions that have precluded defendants from amending their removal notices are those that have involved attempts by a defendant to amend the notice of removal by adding *facts* omitted from the notice that would support jurisdiction on the basis of diversity of citizenship. *See e.g., Rockwell, supra* (court denied defendant leave to amend its notice by changing the identity of the defendant, and real party in interest, in order to create total diversity). Furthermore, Citibank alleges that it should be excused for failing to raise complete preemption as a grounds for removal in its initial Notice of Removal because *Tikkanen v. Citibank (South Dakota), N.A.,* 801 F.Supp. 270 (D.Minn.1992) and *Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818 (1st Cir.1992)[5] had yet to be decided at the time it filed its original notice.

Citibank argues, in essence, that as long as the "facts and allegations necessary for federal-question jurisdiction appear in the complaint itself, a party may amend its removal petition at any time to include grounds based on such facts and allegations. Citibank's Re-

---

**4.** *See also,* *Arnold v. Federal Land Bank,* 747 F.Supp. 342, 343 (M.D.La.1990) (court indicated that it would allow corporate defendant, who had alleged diversity of citizenship as basis for removal in original notice of removal, but failed to specifically allege its principal place of business, to amend its notice by alleging its principal place of business after expiration of initial thirty-day period).

**5.** The *Tikkanen* court held, in a case almost identical to Smiley's, that the plaintiff's state law claims were completely preempted by the National Bank Act and therefore denied the plaintiff's motion to remand.

In *Greenwood,* the First Circuit held that a state bank in Delaware was not subject to limits on late charges imposed by Massachusetts law because the late charges are "interest" governed by § 85 of the National Bank Act and that act preempts the applicable state law. 12 U.S.C. § 85. The *Greenwood* opinion was filed on August 6, 1992.

The defendant's argument that the law was unclear prior to *Greenwood* and *Tikkanen,* and that Citibank should thus be excused for not amending its notice of removal in a more timely manner, is unavailing, however. For one, *Nelson et al. v. Citibank,* 794 F.Supp. 312 (D.Minn. 1992), one of the main cases on which defendant relies, was decided on May 28, 1992—more than five weeks before Citibank filed its initial removal notice. The *Nelson* court held that the plaintiffs' state law causes of action were completely preempted by the National Bank Act and accordingly denied the plaintiffs' motion to remand. Citibank was a party to that action and therefore is deemed to have had constructive knowledge of the court's holding. Moreover, the fact that the law in this area is and was unsettled does not give Citibank the right to sit on its complete preemption claim until some other court has decided the issue in its favor. Citibank should have raised complete preemption as a grounds for removal in its initial notice of removal; the fact that Citibank has more legal authority for its position now than it did in August does not excuse its failure to raise this issue within the applicable 30 day time period.

ply at 15. To support this argument, Citibank cites two recent cases from other district courts which have upheld defendants' rights to amend their notices of removal after the expiration of the initial thirty-day period. *National Audubon Society v. Department of Water & Power,* 496 F.Supp. 499 (E.D.Cal. 1980) and *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934 (E.D.N.Y.1992).[6] Citibank also cites a third district court case, *Schmidt v. Association of Apartment Owners of Marco Polo Condominium,* 780 F.Supp. 699 (D.Hawaii 1991), in which the district court in Hawaii suggests that it might have allowed a fourth party defendant leave to amend if he had had standing to remove.[7]

These cases are clearly distinguishable from the Citibank case, however. In *National Audubon,* for instance, the district court granted the United States's motion for leave to amend its removal petition because the "factual allegations" omitted from the notice were "inherent in the allegations of the cross-complaint" filed against the United States. *Id.,* 496 F.Supp. at 504. The National Audubon Society had sued the Los Angeles Department of Water and Power ("DWP") in state court, asserting that the defendant's diversion of water from the Mono Lake Basin was having a deleterious effect on the Basin's environment. DWP subsequently filed a cross-complaint against several defendants, including two federal agencies: the Forest Service and the Bureau of Land Management. The United States originally sought to remove pursuant to 28 U.S.C. § 1441, on the grounds that the dis-

trict court had original jurisdiction pursuant to 28 U.S.C. § 1346(f), which grants the district courts jurisdiction to adjudicate quiet title actions against real property in which the United States claims an interest. After the expiration of the thirty day period, however, the United States sought leave to amend its petition [8] by asserting § 1442(a)(1), the federal officer removal statute, as the basis of removal.

Although neither the cross-complaint nor the United States' original removal petition alleged that the federal defendants were officers of federal agencies, or acting under the direction of such officers, the court held that it could take judicial notice, pursuant to FRE 201, that the defendants were acting under the direction of the Secretaries of the Interior and Agriculture. In so reaching, the court ruled that it should review the entire file of the proceedings, rather than just the removal petition, to determine whether "the amendment seeks merely to cure defects in form rather than alleging new substance." *National Audubon,* 496 F.Supp. at 503 (citing *inter alia, Willingham v. Morgan,* 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) and *Powers v. Chesapeake and Ohio RR,* 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898)). The court concluded that "the change from section 1441 to section 1442(a)(2)" as the basis of removal was no "more than a shifting of legal theory and thus may be properly viewed as merely a clarification of a defective allegation," rather than the allegation of a

6. Although neither of these cases are binding on this Court, the Court considers them instructive for the purpose of determining the proper scope of its authority to grant leave to amend notices of removal.

7. The *Schmidt* case has little persuasive force because the court never squarely decided whether it would grant the defendants leave to amend their notice. Even if it had, the holding would be mere *dicta* since the court decided that the fourth party defendant lacked standing. The court suggested, however, that

   there was a strong argument that allowing an amendment to the petition would merely allow a clarification of defective jurisdiction allegations.

   *Schmidt,* 780 F.Supp. at 701.

*Schmidt* presents a much stronger case for granting leave to amend than Citibank's case, however, because the fourth party complaint in *Schmidt* clearly set forth federal causes of action against the fourth party defendant, Jacobi. Although Jacobi cited 28 U.S.C. § 1332 (the diversity statute) rather than 28 U.S.C. § 1331 (the federal question jurisdiction statute) as the basis for the federal court's original jurisdiction, this appears more akin to a "mislabeling" case than to one where defendants failed to put the plaintiff and the court on sufficient notice of the basis for removal. *See* Discussion *infra* at pp. 1161–62.

8. In the Judicial Improvements and Access to Justice Act of 1988 (Pub.L. 100–702), § 1446's requirement that the defendant file a *verified petition* was eliminated and replaced by a provision calling for the defendant to file a *notice of removal.*

new substantive ground for removal. *Id.* at 504.

Similarly, in *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934 (E.D.N.Y.1992), the district allowed defendants to amend their notice of removal by adding § 1442(a)(1), the federal officer removal statute, as a grounds for removal because the defendants had "maintained through a decade of Agent Orange litigation" that they "would claim in their defense that they produced herbicides for military use under compulsion by federal officials." *Id.,* 781 F.Supp. at 941 (citations omitted.) Although the initial removal notice had not cited § 1442(a), it did cite *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)—a case outlining the federal common law military contractor defense—to support the federal preemption basis of removal. More importantly, the court found that the defendants had clearly set forth sufficient factual allegations and legal theories to support "federal officer" removal in their initial notice of removal and other pleadings, even if they had not explicitly cited § 1442(a)(1) as the proper statutory grounds for such removal.

In *Ryan,* Judge Weinstein observed that most of the cases in which courts have granted leave to amend after the expiration of the statutory time limit fall into "two loosely defined categories of cases: 'mislabelling' and 'lack of specificity' cases." [9] *Id.* at 940. In the "mislabelling" cases, the initial removal notice and the accompanying record set forth sufficient facts and legal theories to support removal, but the notice itself fails to set forth the proper statutory section for removal. In the latter category, by contrast, the defendant sets forth the proper statutory basis and legal theory of removal, but fails to specify all the facts necessary to support such removal. The former category is perhaps best exemplified by *Walker v. Gibson,* 604 F.Supp. 916 (N.D.Ill.1985), while the latter category is reflected in *Willingham v. Morgan,* 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969).

Citibank's predicament cannot fairly be called either a "mislabelling" or a "lack of specificity" case, however. It is rather a case where the defendant discovered that the original ground on which it sought removal was baseless and tried to substitute a completely separate and distinct ground to take its place. Although Citibank's initial removal notice cites both § 1441(a) [10] and § 1441(b) [11] as bases for removal in its opening paragraph, the body of the notice is directed solely towards arguing diversity as the basis for this Court's jurisdiction; nowhere does Citibank even suggest that this Court has federal question jurisdiction, other than in the initial citation to § 1441(b). Neither the August 5 removal notice nor any of the other pleadings filed by the plaintiffs or Citibank prior to the expiration of the thirty day period set by § 1446(b) indicates in any way that "complete preemption" by the National Bank Act was a grounds for federal jurisdiction. [12] This argument for federal jurisdiction

**9.** Although the *Ryan* opinion only applies these categories to cases in which courts have allowed amendment of removal notices to include § 1442(a)(1) as a basis of removal, these categories are useful in describing the types of cases in which amendment of any kind should be allowed.

**10.** 28 U.S.C. § 1441(a) provides, in pertinent part, that

any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

**11.** 28 U.S.C. § 1441(b) provides in pertinent part, that defendants shall be entitled to remove any "civil action" for which the district courts

have original jurisdiction "founded on a claim or right arising under the Constitution, treaties or laws of the United States."

**12.** Citibank's Answer and Affirmative Defenses, filed on August 12, 1992, cites federal preemption as its Second Affirmative Defense, but it does not claim that the National Bank Act "completely preempts" plaintiffs' state law causes of action. Federal pre-emption is ordinarily merely a federal defense to a state law cause of action, however. As such, it does not defeat the well-pleaded complaint rule and justify removal to federal court, *unless* Congress has so completely pre-empted a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). Citibank is now claiming that the National Bank

was not raised until September 21, 1992, when Citibank lodged its "[Proposed] Amended Notice of Removal", some 68 days after Citibank was originally served.

■ Given the strength of Citibank's pre-emption argument and the strong public interest in developing a uniform and consistent body of federal banking law, the Court understands Citibank's desire to adjudicate this dispute in federal court. But the Court cannot bend procedural rules for substantive ends and it seems quite clear that section 1653 was not intended to bail defendants out of the dilemma in which Citibank finds itself today. Defendants who plead diversity jurisdiction as the grounds for removal may be entitled to amend their removal notices after the first 30 days to plead additional jurisdictional facts. *See e.g., Barrow, supra.* And defendants who plead federal question jurisdiction may be justified in switching the applicable code section on which such jurisdiction is premised. *See e.g., National Audubon, supra.* But defendants are not entitled to plead diversity as the basis for removal in their initial removal notice and then switch their theory 180 degrees by pleading federal question jurisdiction as the applicable grounds for removal in their amended notice, as Citibank attempts to do here today. To allow such a broad escape from the 30 day limit set by § 1446(b) would allow the exception on which Citibank relies to completely swallow the underlying rule and would violate the Ninth Circuit's clear holding that a notice of removal "cannot be ... amended [after the first thirty days] to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made." *Barrow,* 418 F.2d at 317 (citation omitted).

Citibank's Motion for Leave to Amend its Removal Petition is thus DENIED. The Court next addresses the plaintiffs' motion to remand based on Citibank's initial notice of removal.

### 3. *Plaintiffs' Motion to Remand*

Because the Court has denied Citibank's request to amend its removal notice, the only remaining ground for removal argued by Citibank is diversity jurisdiction. Smiley contends that her action does not satisfy the $50,000 amount in controversy requirement set by 28 U.S.C. § 1332(a), however, and that her 'case should therefore be remanded to state court. While Smiley concedes that the class is seeking well in excess of $50,000 in compensatory and punitive damages, she claims that the benefits to the individual class members will be far less than the jurisdictional minimum and that the damages cannot be aggregated to satisfy that minimum. Citibank asserts, however, that the class members have a "common undivided interest" in the punitive damages, constructive trust, and injunctive relief sought by the plaintiff. Citibank therefore contends that the value of the damages and constructive trust, as well as the cost to the defendant of complying with the injunctive relief sought by the plaintiff, should be aggregated for the sake of determining the amount in controversy. This Court disagrees and therefore grants plaintiff's motion to remand.

■ In the context of a class action [13], the claims of each class member which are separate and distinct must be considered individually and cannot be aggregated for the purpose of satisfying the minimum jurisdictional amount. *Snyder v. Harris,*. 394 U.S. 332, 338, 89 S.Ct. 1053, 1057–58, 22 L.Ed.2d 319 (1969). *See also, Zahn v. International Paper Company,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (holding that, in Rule 23(b)(3) class actions, separate claims must be considered individually and each class member's claim must satisfy the jurisdictional amount). The burden rests on the defendants as the removing party to demonstrate that each member of the class has a monetary claim in excess of the minimum jurisdic-

Act *completely* pre-empts the plaintiff's state law causes of action, but Citibank failed to make this argument in its answer. Moreover, Citibank's answer was not filed until 31 days after the complaint was served on Citibank, placing it one day beyond the 30 day limit for notices of removal set by § 1446(b).

13. Although no class has been certified in this action, the Court assumes that such a class exists for the sake of determining whether the amount in controversy under § 1332(a) has been satisfied.

tional amount. *Czechowski v. Tandy Corp.*, 731 F.Supp. 406, 409 (N.D.Cal.1990).

The governing rule for determining whether class members' claims are subject to aggregation was established by the U.S. Supreme Court in *Pinel v. Pinel*, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916):

> The settled rule is that when two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount ... but when several plaintiffs unite to enforce a single title or right in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount. *Id.* at 596, 36 S.Ct. at 417.

[redacted] Under *Pinel*, where class members' claims against the defendants arise from a "common and undivided interest", their claims may be aggregated. Absent such circumstance, each class member's claim must meet the minimum jurisdictional amount of $50,000. *See e.g., Chula Vista City School Dist. v. Bennett*, 824 F.2d 1573, 1579 (Fed. Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988).

[redacted] This Court has already set forth in some detail why class members do not generally have a "common and undivided interest" in their claims for punitive damages and a constructive trust. *McAleer v. Prodigy Services Company et al.*, CV 91–2115 KN (GHKx) (C.D.Cal., December 11, 1991). *See also Harris v. Chase Manhattan Bank, N.A.*, C–92–1483 JPV (N.D.Cal., July 1, 1992) (holding that class' claims for punitive damages should not be aggregated.) Like the plaintiffs in *McAleer*, the putative members of Smiley's class all have a separate and distinct interest in a share of the punitive damages and constructive trust that Smiley is attempting to recover. The Court finds no material differences in the type of relief sought by Smiley and that sought by the class members in *McAleer* and therefore rules that the punitive damages and constructive trust claims may not be aggregated to reach the amount in controversy threshold set by § 1332(a).

The more intriguing argument advanced by Citibank is that plaintiff's claim for injunctive relief should be aggregated because Citibank would be forced to expend more than $50,000 if the Court required it to carry out the court-approved public information campaign sought by plaintiff in her complaint. In essence, Citibank argues that for purposes of determining the amount in controversy, the Court should look at the potential damages or detriment from either the plaintiff's or the defendant's perspective. *Ridder Brothers v. Blethen*, 142 F.2d 395, 399 (9th Cir.1944). This Court strongly disagrees.

While courts sometimes look to the potential cost to the defendant of complying with an injunction in actions brought by individual plaintiffs, the Ninth Circuit firmly rejected the "defendant's viewpoint" test in *Snow v. Ford Motor Company*, 561 F.2d 787 (9th Cir.1977). In that case, Ford argued that the plaintiff's requested injunction—which would have barred Ford from continuing to sell a kit to connect a trailer to a vehicle without including in that kit $11 worth of wiring to connect the trailer lights to the vehicle's electrical system—would cost Ford well in excess of $10,000 [14] if it was granted. The Court rejected Ford's claim, holding that

> where "the equitable relief sought is but a means though which the individual claims may be satisfied, the ban on aggregation [applies] with equal force to the equitable as well as the monetary relief."

*Snow*, 561 F.2d at 790 (quoting *Barton Chemical Corporation v. Avis Rent A Car Sys., Inc.*, 402 F.Supp. 1195, 1198 (N.D.Ill. 1975). "To our knowledge," intoned the court in *Snow*, "every court that has addressed this conflict in the context of a Rule 23(b)(3) class action involving separate and distinct claims has resolved it in favor of *Snyder*" and against the aggregation of the cost of complying with the class' requested equitable relief.

[redacted] Citibank argues, however, that the plaintiff's requested injunctive relief is distinguishable from that sought by the plaintiff class in *Snow* because the injunction sought by Smiley would benefit all California con-

14. At the time, $10,000 was the jurisdictional minimum under 28 U.S.C. § 1332.

sumers, not just those who are already Citibank cardholders or who have already been damaged by Citibank's practices. Smiley's complaint seeks an affirmative injunction requiring Citibank to provide a statewide advertising and public information campaign warning all California residents—including those outside of the putative class—of the purported "illegality and unconscionability" of Citibank's late payment charges. Citibank argues that the Court should aggregate the value of this remedial injunctive relief because (1) it will bestow a common and undivided benefit on all current or potential Citibank credit card holders, regardless of whether they have been harmed by Citibank's benefits thus far; and (2) because Smiley could have brought this claim for relief as an individual plaintiff, purely on her own behalf, in which case the court would look to the cost to the defendant in determining the proper amount in controversy. The Court rejects both of these arguments for the reasons discussed below.

Citibank argues that this case is distinguishable from *Snow* because in that case, the court found that the equitable relief sought by Ford was simply a means of satisfying the individual $11 claims of future purchasers of Ford's trailer connecting kit.

> The right asserted by plaintiffs is the right of individual future consumers to be protected from Ford's allegedly deceptive advertising which is said to injure them in the amount of $11.00 each. that figure is far below the jurisdictional minimum.

*Snow*, 561 F.2d at 790–91. "The proper focus" should not be "influenced by the type of relief requested, but rather continues to depend upon the nature and value of the right asserted." *Id.*, 561 F.2d at 790.

In this case, by contrast, Citibank argues that the plaintiff class is seeking a common benefit on behalf of all the public by forcing Citibank to publicly announce that its practice of charging late fees on its credit cards is illegal and unconscionable. The Court sees no meaningful distinction between the relief requested in *Snow* and that sought by the

plaintiff here, however. Similar to *Snow*, the purpose of the injunctive relief sought here is to save consumers from having to pay the $15 late fee on Citibank's credit cards by alerting them that these charges are illegal under California law. Although Smiley's requested public information campaign seeks to achieve these goals through a different means than that used by the plaintiffs in *Snow*, the "nature and value of the right" Smiley is seeking to protect is much the same—the alleged right of Citicorp's current and future cardholders not to have to pay the $15 late charge if they fail to pay their balance in a timely manner.[15] The fact that plaintiff seeks a court-approved public information campaign does not through shear alchemy transform a cause of action which will provide marginal benefits (in all probability, well less than $100 per class member) into a claim that meets the $50,000 amount in controversy requirement. To hold otherwise would allow any class of plaintiffs who were completely diverse from the defendant to obtain federal jurisdiction merely by seeking an injunction requiring the defendant to engage in an expensive public information campaign announcing the error of his ways. This method of evading the Ninth Circuit's ruling in *Snow*, that the defendant's cost in complying with the injunction should not be aggregated, cannot be sanctioned.

Citibank argues next that the Court should aggregate the value of the plaintiff's injunction because Smiley could have sought such relief solely on behalf of herself, in which case the cost to Citibank of complying with the injunction would be aggregated. The Court finds two flaws with this argument. First, while Smiley may have been able to bring this action as an individual, she clearly did not do so; it is undisputed that she has brought the case on behalf of all other similarly situated Citibank cardholders. Moreover, if Smiley had brought an action purely on behalf of herself it is not at all clear that she could obtain the kind of sweeping injunctive relief order that she seeks here on behalf of all present and potential future Citibank

---

**15.** The Court notes, moreover, that Smiley's request for injunctive relief also includes a request that Citicorp be enjoined from charging any late fees in the future—the same kind of relief sought by the plaintiff class in *Snow*.

 

cardholders. Citibank's reference to *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F.Supp. 925, 926–27 (N.D.Cal.1992) is inapposite because in that case the individual plaintiff sought injunctive relief—in the form of a remedial advertising campaign—pursuant to the private attorney general provisions of California Business and Professions Code § 17204. In this case, by contrast, Smiley is seeking injunctive relief pursuant to section 17203. It is doubtful whether she could obtain such sweeping injunctive relief on behalf of the general public if she were bringing this lawsuit purely as an individual rather than on behalf of a class of "all persons with California billing addresses who have contracted for or been charged a late charge in connection with the use of a Citibank credit card issued by Citibank." *Complaint* at ¶ 11.[16]

### 4. *Plaintiff's Request for Attorneys' Fees*

█ The plaintiff also requests this Court to award her costs, actual expenses, and reasonable attorneys' fees incurred in filing her motion for remand, pursuant to 28 U.S.C. § 1447(c) and Rule 11 of the Federal Rules of Civil Procedure. The Court does not find that Citibank interposed this motion for an improper purpose or lacked a "colorable basis" on which to base its claim, however. Although the Court did not find Citibank's arguments to be very strong, the Court recognizes that the law in this area is unsettled and feels that it would be injudicious and unfair to punish parties for raising novel arguments to push the law in a new direction. Plaintiff's request for attorneys' fees and costs is therefore DENIED.

## II. *CONCLUSION:*

The Court thus DENIES defendant Citibank's Motion to Amend its Notice of Removal and GRANTS plaintiff's request to Remand this action to the Superior Court of the State of California in and for the City and County of Los Angeles.

IT IS SO ORDERED.

---

**16.** Defendant's citation to *Justice v. Atchison, Topeka and Santa Fe Railway Company*, 927 F.2d 503 (10th Cir.1991) is also unavailing because this involved a suit by individual plaintiffs, not a class action. Thus, upon finding that the damages and injunction claims were two separate claims for purposes of § 1441(c), the court was justified in finding the amount in controversy requirement to be satisfied by the potential cost to defendant of complying with the requested injunction.